[Crim. No. 34250. Second Dist., Div. Five. June 26, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH CARLOS POGGI, Defendant and Appellant.

582

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Edward H. Schulman and Michael Tanaka, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman, Robert R. Anderson and Elizabeth A. Baron, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—Appellant Joseph Poggi appeals from an order pursuant to Welfare and Institutions Code section 6316.2 extending for one year appellant's commitment to the Department of Mental Health as a mentally disordered sex offender.

Following appellant's conviction of forcible rape in 1972,[1] criminal proceedings were adjourned and appellant was adjudged a mentally

---

[1]Appellant, then 22, raped a 50-year-old woman whose family he had known for many years. During the course of the rape he beat her, choked her, attempted to smother her with a pillow, and threatened to kill her.

disordered sex offender and committed to the Department of Mental Hygiene[2] to be confined in the Atascadero State Hospital pursuant to Welfare and Institutions Code section 6316. In 1973 he was returned to court pursuant to Welfare and Institutions Code section 6325 as not recovered but still dangerous, but the court recommitted appellant to the department for placement and treatment at Patton State Hospital, requesting semiannual reports on his progress toward recovery. Upon receipt of periodic reports during 1974 and 1975, the court ordered no change in appellant's status. On August 20, 1976, the court approved appellant's transfer to Atascadero State Hospital, which apparently arose from appellant's involvement in drugs at Patton.

The Board of Prison Terms pursuant to Welfare and Institutions Code section 6316.1, subdivision (b), determined the maximum term of commitment to expire November 14, 1977. On October 21, 1977, the District Attorney of Los Angeles County filed a petition under Welfare and Institutions Code section 6316.2 to extend appellant's commitment for one year, because appellant suffers from a mental disorder and as a result of such mental disorder is disposed to the commission of sexual offenses to such a degree that he presents a serious threat of substantial harm to the health and safety of others. Proceedings were delayed for an appellate ruling, rendered April 26, 1978, that the petition had been timely filed. (*People* v. *Superior Court* (*Rigg*[, *Armstrong, Brandes and Poggi*]) (1978) 80 Cal.App.3d 407 [145 Cal.Rptr. 711].)

Following a jury trial, the jury found that appellant suffers from a mental disorder and as a result of such mental disorder is predisposed to the commission of sexual offenses to such a degree that he presents a serious threat of substantial harm to the health and safety of others. The court ordered appellant committed to the State Department of Mental Health for confinement at Patton State Hospital for a period of one year, commencing on the date of the commitment order, December 8, 1978.

Three psychiatrists and four hospital staff employees testified for the People at appellant's extended commitment hearing.[3] Based upon appellant's history, hospital records, and his interview with appellant on October 12, 1978, Dr. Blake Skrdla diagnosed appellant's mental disorder as (1) psychosis, chronic, with history of repeated drug intoxication

---

[2]Later, Department of Health; currently, Department of Mental Health.
[3]One psychiatrist and a staff psychologist testified for appellant at the hearing.

and (2) antisocial personality and sexual deviation, aggressive sexuality. In his opinion, appellant is predisposed to commission of sexual offenses to such a degree that he represents a serious threat of substantial harm to the health and safety of others. That appellant is psychotic was indicated by (1) hallucinations which appellant suffered as recently as June 1978 and (2) appellant's medication, 800 milligrams of Mellaril a day, which would put a normal person to sleep and which exceeded the usual dose of 100 to 300 milligrams for the average psychotic patient. Appellant is preoccupied with feelings of sexual inadequacy and fantasies of rape.

Dr. George Y. Abe who interviewed appellant in November 1978 was of the opinion appellant is a mentally disordered sex offender predisposed to the commission of sexual offenses. Appellant was suffering a form of psychosis and schizophrenic symptoms. He needed a high dosage of medication to prevent psychotic symptoms.

Based upon a review of appellant's records, Dr. Ronald Markman was of the opinion appellant is predisposed to the commission of sexual offenses and is a serious threat of substantial harm to others. Appellant is a borderline psychotic as indicated by the amount of his medication. He would be unlikely to take medication on the outside, which would likely lead to dangerous behavior. Appellant has an antisocial character, and inadequate self-control and conscience.

Three psychiatric technicians from the hospital staff related appellant's conversations to them about an incident in October of 1977 in which he attempted to lure a female employee onto his ward, while a picnic was going on outside, for purposes of raping her. He told them it was definitely his plan to rape her and that he had no doubt he would have raped her. In these and other conversations, appellant stated he got a great deal of excitement physically assaulting women, that he felt women were to be boxed around and assaulted, and that rape is a way of life. Appellant felt fear, distrust, anger, and hatred toward women.

### DISCUSSION

Appellant contends (1) that the extended commitment must be reversed in the absence of a finding that appellant was "amenable to treatment"; (2) that the testimony of the hospital staff as to statements made to them by appellant violated appellant's privilege against self-incrimination; and (3) that the court erred in commencing the one-year

period of extended commitment from the date of the extended commitment order, rather than the date of expiration of the previously determined maximum term of commitment. None of these contentions has merit.

■ Appellant's second and third contentions require little discussion. The statements to hospital staff did not incriminate appellant by tending to show his guilt of a crime. They were used to show his mental condition to determine whether his commitment should be extended because as a result of mental disorder he is dangerous to the health and safety of others. The statements were not privileged. (*People* v. *Lakey* (1980) 102 Cal.App.3d 962, 976-977 [162 Cal.Rptr. 653]; see *Cramer* v. *Tyars* (1979) 23 Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793]; *In re Duckett* (1978) 76 Cal.App.3d 692, 698-699 [143 Cal.Rptr. 100].)

The commitment extension proceedings were timely initiated (*People* v. *Superior Court (Rigg), supra,* 80 Cal.App.3d 407), and continued for good cause. ■ It was proper to commence the one-year extension from the date of the extended commitment order. (*People* v. *Lakey, supra,* 102 Cal.App.3d 962, 977-980.)

■ Appellant's main contention is that the extension of commitment pursuant to Welfare and Institutions Code section 6316.2 is invalid in the absence of a finding that appellant was "amenable to treatment."[4] Appellant was convicted of forcible rape in 1972, which then carried a punishment of imprisonment in the state prison for from three years to life. Under Welfare and Institutions Code section 6316.1, added in 1977, the Board of Prison Terms is required, in the case of mentally disordered sex offenders who committed a felony prior to July 1, 1977, to determine the maximum term of commitment based upon the longest term of imprisonment which could have been imposed for the offense had the crime been committed after July 1, 1977. Section 6316.1 provides that the person "may not be kept in actual custody longer than the maximum term of commitment, *except as provided in Section 6316.2.*" (Welf. & Inst. Code, § 6316.1, subd. (b); italics added.)

---

[4]Appellant is no longer subject to this commitment order, but in view of the importance of the issue involved and the possibility that in other cases the one-year extended commitment period could expire before a normal appeal could be completed, we decline to dismiss the matter as moot. (*In re William M.* (1970) 3 Cal.3d 16, 23-25 [89 Cal. Rptr. 33, 473 P.2d 737].)

Welfare and Institutions Code section 6316.2 provides that a person may be committed beyond the term prescribed by section 6316.1 under the procedures and criteria set forth. We note that sections 6316.1 and 6316.2 were added by chapter 164 of the statutes of 1977 in order "to provide additional safeguards against the premature release of dangerous persons." (Stats. 1977, ch. 164, § 6, p. 638.)

As it read when the instant petition was filed, section 6316.2 specified that a person may be committed beyond the maximum term, for a period of one year, if such person "meets all of the following: [¶] (1) The 'sex offense' as defined in subdivision (a) of Section 6302 of which the person has been convicted is a felony, whether committed before or after July 1, 1977, or is a misdemeanor which was committed before July 1, 1977. [¶] (2) Suffers from a mental disorder, and as a result of such mental disorder, is predisposed to the commission of sexual offenses to such a degree that he presents a serious threat of substantial harm to the health and safety of others." (Stats. 1977, ch. 164, § 3, pp. 634-635.)

Appellant met all of these criteria, and the jury so found.

Appellant attempts to read into the statute a requirement for an additional finding, that he be amenable to treatment.[5] The statute contains no such requirement by its express terms. As a matter of fact, in 1979 the Legislature added subdivision (j) to section 6316.2, to state expressly that a finding of amenability to treatment is *not* required. Subdivision (j) reads: "Amenability to treatment is not required for a finding that any person is a person as described in subdivision (a), nor is it required for treatment of such person. Treatment programs need only be made available to such person. Treatment does not mean that the treatment be successful or potentially successful, nor does it mean that the person must recognize his or her problem and willingly participate in the treatment program." (Stats. 1979, ch. 992, § 2, p. 3379.)

Although enacted subsequently, subdivision (j) does not change, but rather clarifies, the original provisions of section 6316.2, which have never expressly required a finding of amenability. Subdivision (j) was added as an urgency statute with the following declaration by the Leg-

---

[5]We do not suggest that appellant was *not* amenable to treatment. Since the trial court ruled amenability to treatment was not an issue, the expert witnesses were not questioned about it, and neither the court nor the jury made a finding on the matter.

islature: "In order that this act, which would provide a necessary clarification in the law regarding the grounds for the release from commitment or [*sic* of] persons found to be mentally disordered sex offenders, may be effective at the earliest possible date, it is necessary that this act take effect immediately." (Stats. 1979, ch. 992, § 4, p. 3382.)

Appellant's contention that other sections of the mentally disordered sex offender law, when construed together with section 6316.2, *imply* a necessity for a finding of amenability to treatment under section 6316.2, cannot be accepted in light of the Legislature's express declaration that such is not the case.

To adopt the position advocated by appellant, we would have to say the Legislature intended that even though a mentally disordered sex offender is predisposed to the commission of sexual offenses and dangerous to the public, he must nevertheless be released if there is no prospect of curing him. The very statement of the proposition shows its absurdity.[6]

In *People* v. *Compelleebee* (1979) 99 Cal.App.3d 296, 302, footnote 4 [160 Cal.Rptr. 233], and *People* v. *Lakey, supra,* 102 Cal.App.3d 962, 970-971, footnote 7, relied upon by appellant, the courts declined to give effect to subdivision (j), finding the amendment to be inapplicable and expressing doubts as to its constitutionality. We must respectfully disagree.

First, although the amendment was enacted after the proceedings herein, it was not a change in the law but a clarification of the true meaning of the statute. (*Forde* v. *Cory* (1977) 66 Cal.App.3d 434, 438 [135 Cal.Rptr. 903]; *Nationwide Investment Corp.* v. *California Funeral Service, Inc.* (1974) 40 Cal.App.3d 494, 501 [114 Cal.Rptr. 77].) Section 6316.2 never contained an express requirement for a finding of amenability to treatment, and in enacting subdivision (j) as an urgency measure the Legislature specifically declared that its purpose was to

---

[6]As an alternative to outright release, a 90-day commitment under the Lanterman-Petris-Short Act could be sought. (Welf. & Inst. Code, §§ 5300, 5304.) But "[a]s a practical matter civil commitment proceedings under the LPS Act simply do not provide adequate protection against premature release of dangerous persons to society. This was recognized by *Moye* [*In re Moye* (1978) 22 Cal.3d 457 (149 Cal.Rptr. 491, 584 P.2d 1097)] and for that reason the Supreme Court provided for an extended hearing under the Welfare and Institutions Code." (*People* v. *Balderas* (1980) 104 Cal. App.3d 942, 948; fn. omitted [164 Cal.Rptr. 275].)

provide a necessary clarification in the law. (Stats. 1979, ch. 992, § 4, p. 3382.)

Second, *Compelleebee* and *Lakey* assume that subdivision (j) would be unconstitutional under *People* v. *Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373]. We think that assumption is unwarranted. *Feagley* invalidated a portion of the prior law relating to commitment of mentally disordered sex offenders, former Welfare and Institutions Code section 6326. The Legislature subsequently repealed section 6326 and enacted sections 6316.1 and 6316.2. ■ "Such deliberate acts of the Legislature come before us clothed with a presumption of constitutionality. 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reasons for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.'" (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296]; *In re Ricky H.* (1970) 2 Cal.3d 513, 519 [86 Cal.Rptr. 76, 468 P.2d 204].)

Feagley was a mentally disordered sex offender who, in the unanimous opinion of the experts, would not benefit by care or treatment in a state hospital. Under *former* Welfare and Institutions Code section 6326, since repealed, he was thereupon committed for an *indeterminate* (and *unlimited*) *period* to a *prison* under the jurisdiction of the Department of Corrections. The Supreme Court repeatedly emphasized that Feagley was in a prison and as a practical matter did not have available to him the treatment facilities or programs of a state hospital. (*Id.*, 14 Cal.3d at pp. 362-376.) The court *held* that the state may not involuntarily confine a civilly committed mentally disordered sex offender (1) for an indefinite period (2) in a prison setting. (*Id.*, at p. 376.) Although the statute in question there contained no time limit, the court recognized that it was up to the Legislature to determine the length of term necessary to protect society against a potential recurrence of the dangerous conduct of a mentally disordered sex offender. (*Id.*)

The new statutory scheme satisfies the requirements of *Feagley*. Unlike *Feagley*, an MDSO committed under section 6316.2 is not subject to an indefinite term. The extension is for a limited period of one year (Welf. & Inst. Code, § 6316.2, subd. (f)).[7] Each such extension comes

---

[7]The statute now provides an extension period of two years. (Stats. 1979, ch. 992, § 2, p. 3379.)

about only after a trial at which "[t]he patient shall be entitled to the rights guaranteed under the Federal and State Constitutions for criminal proceedings." (Welf. & Inst. Code, § 6316.2, subd. (e).)

A person subject to extension under section 6316.2 is not, like Feagley, confined in a prison setting. Rather, the person is committed to a treatment facility of the State Department of Mental Health, which is under a mandatory statutory obligation to provide treatment. (Welf. & Inst. Code, § 6316.2, subds. (f), (i).)[8] It is clear from the record that appellant is in fact receiving treatment. (Cf. *In re Ingram* (1978) 76 Cal.App.3d 495, 499-500 [142 Cal.Rptr. 825].)

Our Supreme Court had occasion to discuss section 6316.2 in *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097]. Having been found not guilty by reason of insanity, of felony hit-and-run driving, Moye was committed to the Department of Mental Hygiene to be placed in a state hospital until his sanity be restored, pursuant to Penal Code section 1026. That was a form of indefinite commitment similar to the statute invalidated in *Feagley*. The Supreme Court contrasted the commitment under Penal Code section 1026 with the new procedures for extended commitment of mentally disordered sex offenders adopted in response to *Feagley*. The Supreme Court held that persons who had been committed pursuant to Penal Code section 1026 and who had been in custody in a state hospital for a period equal to the maximum term for the underlying criminal offense, should be similarly treated. The court approved of section 6316.2 as a model to be followed for such extended commitments. The court said: "As in the case of MDSOs and other dangerous offenders, persons in petitioner's class properly, and consistent with equal protection principles, may be subjected to a period of extended commitment once the maximum term of punishment has expired, in the event the People (or other committing authority) can establish that the person committed remains a danger to the health and safety of himself or others. As noted above, for example, the commitment of MDSOs may be so extended only if a specified procedure is followed, involving the filing of a petition for an extended commitment of one year, notice to the person committed of his right to an attorney and a jury trial, and a hearing on the issue of dangerous-

---

[8]Under a 1979 amendment adding subdivision (k) to section 6316.2, if it becomes necessary to transfer the person to a treatment unit in the Department of Corrections the person is entitled to the same treatment and quality of care and therapy that would be received in a state hospital program. (Stats. 1979, ch. 992, § 2, p. 3379.)

ness. (Welf. & Inst. Code, § 6316.2.) The extended commitment period is one year, subject to annual renewal following similar notice and hearing. (*Ibid.*) To the extent practicable, and in the absence of further legislation on the subject, the procedure for the extended commitment of persons committed following their acquittal on the ground of insanity should conform to the procedures specified in section 6316.2 of the Welfare and Institutions Code.

"The People urge that the paramount interest of the state in protection of the public justifies the commitment and release procedure set forth in sections 1026 and 1026a. Nonetheless, the availability of an extended commitment procedure akin to section 6316.2 of the Welfare and Institutions Code, or the institution of civil commitment proceedings under the LPS act, would appear to constitute adequate protection against the premature release of dangerous persons to society. If, after a substantial period of confinement and treatment equivalent in duration to the maximum term for the offense committed, petitioner remains demonstrably dangerous, an additional commitment may be sought as discussed above. Although the burden of proof on the issue of dangerousness will have shifted to the People once confinement for the maximum term of the underlying offense has occurred, upon a proper showing the petitioner may be retained in confinement and will not be 'loose' or 'at large.'" (*In re Moye, supra,* 22 Cal.3d 457, 467-468.)

There is no requirement stated in *Moye* that the insane person be amenable to treatment in order to be subject to extension of his commitment under the procedures applicable to mentally disordered sex offenders. Appellant, like Moye, has committed a crime, has been in custody for a period equal to the maximum term of commitment, but is still dangerous due to his mental condition. If a finding of amenability to treatment is not constitutionally required for insane persons, then neither is it required for mentally disordered sex offenders. Under *Moye* each is subject to an extension of commitment for the limited period and under the procedural safeguards of section 6316.2.[9]

Thus there is no reason to find, as argued by appellant, that Welfare and Institutions Code section 6316.2 as interpreted by the Legislature in subdivision (j) thereof, would violate any constitutional

---

[9]In response to *Moye,* the Legislature subsequently enacted Penal Code section 1026.5, which virtually incorporates for insane persons the procedures of Welfare and Institutions Code section 6316.2 for mentally disordered sex offenders.

guarantees against cruel or unusual punishment, denial of due process of law, or denial of equal protection of the law. Although appellant's commitment can be extended under section 6316.2, while the term of a prisoner in the state prison cannot, we find no denial of equal protection in such procedure. As the Legislature has recognized, the state has a compelling interest in preventing the premature release of dangerous persons. As implied by *Feagley*, the prisoner and the hospital patient are not similarly situated in their conditions of confinement, and the Legislature can constitutionally choose to provide that a prisoner who has served his term of punishment in prison shall be released, but that a dangerous patient confined to a hospital is subject to the extension of his commitment whether or not he is found to be amenable to treatment. (See *In re Moye, supra*, 22 Cal.3d at p. 467; *People* v. *Superior Court* (*Rigg*), *supra*, 80 Cal.App.3d at p. 414.)

The order of commitment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1980. Tobriner, J., and Newman, J., were of the opinion that the petition should be granted.