[Civ. No. 59029. Second Dist., Div. Two. Jan. 14, 1981.]

Conservatorship of the Person and Estate of THOMAS MITCHELL.
GORDON W. TREHARNE, as Public Guardian, etc.,
Petitioner and Respondent, v.
THOMAS MITCHELL, Objector and Appellant.

608

COUNSEL

Susan L. Wolk, under appointment by the Court of Appeal, for Objector and Appellant.

John H. Larson, County Counsel, and Jonathan B. Crane, Deputy County Counsel, for Petitioner and Respondent.

OPINION

**BEACH, J.**—Following a court hearing, appellant was found to be gravely disabled as a result of a mental disorder, and the public guardian was appointed as his conservator under the Lanterman-Petris-Short Act (LPS Act).[1] On appeal, appellant challenges (1) the trial court's admission of the psychiatrist's opinion on appellant's mental condition, and (2) the sufficiency of the evidence on the issue of "grave disability." We reject these contentions and affirm the judgment.

### FACTS

On January 8, 1980, the Public Guardian for Los Angeles County filed a petition in the superior court to establish a conservatorship over the person and estate of the appellant pursuant to Welfare and Institutions Code section 5350 et seq. A court hearing was held on January 30, 1980, in which a psychiatrist, appellant's parents and appellant testified. A summary of that testimony follows.

On January 25, 1980, Dr. Jack C. Borel, a psychiatrist at Camarillo State Hospital (hereafter Camarillo) examined appellant in connection

---

[1]See Welfare and Institutions Code section 5350 et seq.

with the conservator proceedings. Appellant had eight prior admissions to Camarillo. Before the examination, the psychiatrist told appellant of the nature and purpose of the examination. He also mentioned that he would inform the court of the results. Based on his examination, his review of appellant's hospital chart, and statements made by appellant, Dr. Borel diagnosed appellant's mental condition as chronic, undifferentiated schizophrenia. Dr. Borel testified that appellant suffered from delusions and hyperactivity, had an argumentative attitude which led him into fights, and was unwilling or unable to take prescribed medication voluntarily. In light of appellant's mental disorder, it was the psychiatrist's opinion that appellant was gravely disabled in that he was unable to provide himself with food, clothing or shelter.

Appellant's parents testified that prior to his hospitalization appellant lived at home and received social security benefits of $359 a month. Occasionally, appellant would go to Hollywood. He would go there dressed in decent clothes but return in either filthy clothes or different clothes of a lesser quality. Appellant had assaulted his father and threatened to kill both his parents, as well as his sister and her husband. Both parents testified that because of appellant's violent behavior they were afraid to have him live with them in his present condition.

Appellant, 28 years old at the time of the hearing, testified he was "a ladies' man" and could obtain food, clothing and shelter from any one of his 20 girl friends in Hollywood. He further stated that if he did not take his medication he "could tear a person's head off," and that he would kill his father if the latter "messed with him."

Based on the testimony presented, the trial court found appellant to be gravely disabled as the result of a mental disorder and appointed the public guardian as conservator of appellant's person.

## DISCUSSION

Appellant contends the psychiatrist's opinion of appellant's mental condition should not have been admitted by the trial court because prior to the psychiatric examination appellant was not advised of his right not to incriminate himself.

The Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that no person shall be compelled in any criminal case to be a witness

against himself. A similar provision is found in article I, section 15 of the California Constitution. ■ As the United States Supreme Court pointed out in *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], the availability of the privilege against self-incrimination "does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites...." Thus, the court pointed out, the privilege may be claimed in a civil or administrative proceeding if the statement is or may be inculpatory. (*Id.* at p. 49 [18 L.Ed.2d at p. 558].) ■■■■ ■ Clearly, therefore, in any proceeding, civil or criminal, an individual has the right to decline to answer questions which may tend to incriminate him in criminal activity. (Evid. Code, § 940; *Cramer* v. *Tyars* (1979) 23 Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793].)[2] The issue before us involves the need, if any, to advise the individual of the privilege prior to the psychiatric examination.

■ A person who is found to be gravely disabled can be involuntarily confined in a mental hospital for up to a year by the conservator, with the possibility of additional one-year extensions. (Welf. & Inst. Code, § 5358, *Conservatorship of Roulet*, (1979) 23 Cal.3d 219, 224 [152 Cal.Rptr. 425, 590 P.2d 1].) ■ Appellant contends that because such a commitment may result in a substantial loss of liberty, the interests in avoiding such a commitment are as high as those involved in criminal proceedings, and therefore the person sought to be civilly committed should, prior to the psychiatric examination, be advised of his privilege against self-incrimination. A warning of that privilege prior to any custodial questioning is an absolute right in criminal cases. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) In *Cramer* v. *Shay* (1979) 94 Cal.App.3d 242, 245 [156 Cal.Rptr. 303], the court held that the criminal law's required *Miranda* warnings were not applicable to a proceeding having as its objective the civil commitment of a retarded person who is a danger to himself or to others. Appellant argues that because such criminal law concepts as proof beyond a reasonable doubt and jury unanimity have recently been held to apply on due process grounds to conservatorships under the LPS Act as well (*Conservatorship of Roulet, supra,* 23

---

[2]In *Cramer* v. *Tyars, supra,* 23 Cal.3d 131, 138-139, the court held that an individual alleged to be mentally retarded and a danger to himself could be called as a witness in his commitment proceeding and required to respond to *nonincriminatory* questioning which might reveal his mental condition to the jury. The court noted that the right to remain silent would apply only if the individual's response might subject him to criminal prosecution.

Cal.3d at p. 235), similarly a warning of the right to remain silent should be given in a precommitment psychiatric examination.

A due process analysis requires a balancing of the individual's rights against the interests of the state. Three individual interests appear to underlie the application of the privilege against self-incrimination in a criminal proceeding: protecting against coercion, maintaining a proper balance between the state and the individual, and protecting personal privacy. (*Developments in the Law—Civil Commitment of the Mentally Ill* (1974) 87 Harv.L.Rev. 1190, 1306-1307.) In a precommitment psychiatric examination in an LPS conservatorship proceeding, as is involved here, coercion is less of a problem than in a criminal case. For instance, in the criminal context, the purpose underlying the *Miranda* warnings is to combat the inherently compelling pressures of in-custody interrogation which work to undermine the defendant's will to resist and to compel him to speak where he otherwise would not do so freely. (*Miranda* v. *Arizona, supra*, 384 U.S. 436, 467 [16 L.Ed.2d 694, 719-720].) Admittedly, some coercion may be present in the precommitment psychiatric examination. The unfamiliar surroundings and the separation from friends and family may weaken the individual's ability to resist cooperation with the psychiatrist. Yet, when, as here, the state's primary consideration is to care for and treat, rather than to punish, the individual there is little likelihood that the individual will be subjected to inhumane treatment to compel him to submit to a psychiatric interview. (*Developments—Civil Commitment, supra*, at pp. 1307-1308.) Certainly, there is nothing inhumane in requiring him to furnish the psychiatrist with information which will form the basis for treating his mental disorder. After all, it is not considered inhumane if a parent forces a sick child to undergo painful medical treatment if a cure will thereby be effected. (Aronson, *Should the Privilege Against Self-incrimination Apply to Compelled Psychiatric Examinations?* (1973) 26 Stan.L.Rev. 55, 88, 90.)

Also of far less importance in a civil commitment proceeding is the imbalance of power present in a criminal proceeding, where the state has available to it various investigatory and prosecutorial resources to obtain evidence. In a civil commitment, the psychiatric examination may well be the primary basis for the state to rely on as evidence. (*Developments—Civil Commitment, supra*, 87 Harv.L.Rev. 1190, 1308.)

The third interest mentioned above, protection of personal privacy, appears to be a more persuasive rationale for the argument that a warn-

ing of the privilege must be given prior to any psychiatric examination in a civil commitment proceeding as is involved here. Without question, the psychiatric examination is intrusive. It seeks to obtain information about the individual's innermost thought processes. (*Developments— Civil Commitment, supra*, 87 Harv.L.Rev. 1190, 1309.) Yet, the interest in limiting the state's intrusion upon an individual's privacy has never been considered absolute. The possible injury to the individual must be weighed against the state's interest in obtaining the information. (Aronson, *Psychiatric Examinations, supra*, 26 Stan.L.Rev. 55, 88.) To require an automatic warning of the privilege before the psychiatric examination would seriously impair the state's valid objectives of civil commitment. To assist the psychiatrist in evaluating the individual's mental condition, it is essential to get the individual to talk about himself. While the psychiatrist could arrive at a diagnosis based on observations made by himself or by others, still a major tool in determining the individual's mental condition would be an interview with him. (*Developments—Civil Commitment, supra*, 87 Harv.L.Rev. 1190, 1307, 1309-1310.)

Moreover, even if the privilege against self-incrimination were to apply automatically to a precommitment psychiatric examination, we perceive a problem with the voluntariness of any waiver of that right. It would appear contradictory that an individual whose mental disability is at issue can be said to have knowingly and intelligently waived his right not to incriminate himself. (See e.g., *Pate* v. *Robinson* (1966) 383 U.S. 375, 384 [15 L.Ed.2d 815, 821, 86 S.Ct. 836].)[3]

For the reasons set forth above, we conclude that in a conservatorship proceeding under the LPS Act there is no absolute right to a warning of the privilege against self-incrimination before the psychiatric examination.

Turning to the case at bench, the record shows that the psychiatrist's opinion was not based solely on responses during the psychiatric exami-

---

[3]We are aware that in *Lessard* v. *Schmidt* (E.D.Wis. 1972) 349 F.Supp. 1078, 1101, a case cited by neither party on appeal, a federal district court held that the State of Wisconsin could not civilly commit individuals on the basis of their statements to psychiatrist in the absence of a warning that they were not obliged to speak to the psychiatrist. We are not persuaded by the court's reasoning in *Lessard* and do not consider ourselves bound by its holding. (See *People* v. *Tremayne* (1971) 20 Cal.App.3d 1006, 1014 [98 Cal.Rptr. 193], stating that state courts are not required to follow the decisions of lower federal courts on constitutional issues.)

nation, but also on appellant's hospital charts at Camarillo, to which appellant had been admitted on eight previous occasions. Although appellant appears to suggest otherwise, nothing in the record before us indicates that his statements to the psychiatrist incriminated him in criminal activity subjecting him to prosecution therefor.

Appellant's remaining contention is that the evidence was insufficient to support a finding of grave disability. A summary of the evidence before the trial court was given earlier in this opinion. We conclude there was substantial evidence to support the trial court's finding that as a result of a mental disorder appellant was gravely disabled.

The order appointing the public guardian as conservator of appellant's person is affirmed.

Fleming, Acting P. J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 11, 1981.