91 Cal.Rptr.2d 121 (1999)
76 Cal.App.4th 1334
The PEOPLE, Plaintiff and Respondent,
v.
Anthony Francis DACAYANA, Defendant and Appellant.
No. B122454.
Court of Appeal, Second District, Division Six.
December 13, 1999.
Review Granted March 22, 2000.
*122 Jean F. Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Corey J. Robins, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
COFFEE, J.
Anthony Francis Dacayana appeals from the trial court's order committing him to Atascadero State Hospital (ASH) as a "sexually violent predator" (SVP) under the Sexually Violent Predators Act (SVP Act). (Welf. & Inst.Code, § 6600 et seq.)[1] The SVP Act permits the involuntary civil commitment of persons incarcerated in state prison who (1) have been convicted of a sexually violent offense against more than one victim; (2) have a diagnosed mental disorder affecting emotional or volitional capacity; and (3) are a danger to others because they are likely to engage in sexually violent behavior as a result of the disorder. (§ 6600, subd. (a).)
Appellant raises constitutional challenges to the SVP Act and complains of several errors specific to his own case. We reject his constitutional claims for the reasons recently stated by our Supreme Court in Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584. We reject his remaining arguments for the reasons explained below and affirm the order of commitment.

FACTS
Appellant pled nolo contendere to forcible rape in 1979, after he sexually assaulted a female bartender at gunpoint. (Pen. Code, § 261, subd. (a)(2), former § 261, subd. (2).) He was sentenced to eight years in prison and was paroled in 1985.
In 1987, appellant pled guilty to forcible rape and received a 15-year prison sentence. *123 (Pen.Code, § 261, subd. (a)(2), former § 261, subd. (2).) The victim was a blind woman whom he had met at an Alcoholics Anonymous meeting and with whom he had a brief sexual relationship. Before his scheduled release on parole in that case, appellant was certified as an SVP and a petition for involuntary commitment was filed. (§ 6601.)
Appellant was examined by two clinical psychologists as part of the SVP certification process, Doctors Amy Phenix and Jonathan French. Both doctors opined that he met the criteria for commitment, in that he suffered from a diagnosed mental disorder and was more likely than not to engage in sexually violent behavior if released.
Dr. Phenix concluded that appellant suffered from three forms of mental disorder listed in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSIV): (1) paraphilia, not otherwise specified (n.o.s.), rape; (2) antisocial personality disorder; and (3) alcohol or polysubstance abuse. Dr. French's diagnosis was similar: (1) paraphilia, n.o.s.; (2) antisocial personality disorder; (3) passive-aggressive personality disorder; and (4) polysubstance abuse. These diagnoses were consistent with that of Dr. Gabrielle Paladino, the staff psychiatrist who treated appellant when he was transferred to ASH.
"Paraphilia" is another word for sexual deviancy, and is listed in the DSM-IV. It is characterized as a condition which occurs over a period of at least six months, by having recurrent, intense sexually deviant fantasies and sexual urges. (DSM-IV, at pp. 522-523.) According to Doctors Phenix and French, sex with nonconsenting persons is included within the general category of paraphilias. Antisocial personality disorder is characterized by a chronic and repeated disregard for the rights of others, including deceitfulness, impulsivity, aggressiveness, reckless disregard for the safety of self or others, consistent irresponsibility and lack of remorse.
Both doctors opined that appellant's mental disorders affected his emotional or volitional capacity and made him more likely than not to commit crimes of sexual violence. They relied upon the number of appellant's prior sexual offenses, the fact he was not deterred by periods of incarceration, and his nonsexual criminal history. Dr. Phenix noted that appellant had scored very highly on the "Hare Psychopathy Checklist-Revised," which showed he was more likely than others with antisocial personality disorder to reoffend. Dr. French observed that appellant had a history of manipulating people and had no empathy for his victims. His test scores on the Minnesota Multiphasic Personality Inventory (MMPI) identified him as a "psychopathic deviant."
The defense called Dr. Robert Halon, a clinical psychologist who interviewed appellant and performed several tests. Dr. Halon concluded that appellant did not suffer from a mental disorder affecting his emotional or volitional capacity. He testified that the diagnosis of "paraphilia, n.o.s., rape" was not recognized by the DSM-IV. He pointed out that rape is listed in the DSM-IV under "sexual sadism," and that appellant's conduct did not meet that definition because he did not use more force than necessary to effectuate his rapes. Dr. Halon believed that appellant was simply a "highly narcissistic, antisocial person, who has decided ... not to earn his way, but to take it whatever way he can get it...."
Dr. Fred Fowler performed the intake evaluation when appellant was transferred to ASH. He concluded that appellant was dependent on different drugs and had an antisocial personality disorder by history, but did not have a mental disorder that rendered him a danger.
The jury unanimously found that appellant met the SVP criteria beyond a reasonable doubt. The court committed him to ASH for a maximum of two years.

*124 DISCUSSION

I.
Appellant was interviewed by Doctors Phenix and French as part of the SVP certification process. He signed a consent form before each interview which advised him of the purpose of the evaluation, the possibility of an involuntary commitment, and his right to refuse to submit. Appellant filed a pretrial motion to suppress evidence of statements he made during these interviews, arguing that he was entitled to have an attorney present and should have been advised of this right under Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (Miranda). The trial court did not err by denying the motion.
In Miranda, the Supreme Court established safeguards "intended to protect the exercise of the Fifth Amendment privilege against self-incrimination by persons undergoing custodial interrogation." (People v. Peevy (1998) 17 Cal.4th 1184, 1191, 73 Cal.Rptr.2d 865, 953 P.2d 1212.) These safeguards include the right to assistance of counsel when the suspect so desires, and an admonition before questioning to advise of this right. (Ibid.)
The interviews in this case were not "interrogations" under Miranda because they were not reasonably likely to elicit incriminating responses from appellant. (People v. Wader (1993) 5 Cal.4th 610, 637, 20 Cal.Rptr.2d 788, 854 P.2d 80.) They were conducted to determine whether appellant qualified as an SVP, not to gather evidence for a criminal prosecution. (See § 6601, subds. (b)-(c).) An SVP proceeding seeks a civil commitment for the purposes of treatment rather than punishment for the underlying offense. (Hubbart v. Superior Court, supra, 19 Cal.4th at pp. 1172-1179, 81 Cal.Rptr.2d 492, 969 P.2d 584.) Appellant had already been convicted of the crimes which led to the SVP certification and could not again be prosecuted for those offenses. (See People v. Henderson (1981) 117 Cal.App.3d 740, 746, 172 Cal.Rptr. 858 [defendant's statements to ASH personnel could be introduced in mentally disordered sex offender (MDSO) proceeding].)
Appellant notes that while the primary purpose of the interviews was to screen him for an involuntary civil commitment based in part on his qualifying prior convictions, the doctors also elicited information about unrelated criminal conduct which had not led to a conviction. Our conclusion that the interviews are admissible in the instant SVP proceeding does not necessarily mean they would be admissible in a criminal prosecution for such crimes. (See Estelle v. Smith (1981) 451 U.S. 454, 462-464, 101 S.Ct. 1866, 1872-1873, 68 L.Ed.2d 359, 368-370 [statements by defendant during interview to determine competency, which were admissible during the competency proceeding, were not admissible during penalty phase of capital case].)[2]
Numerous cases have held that the privilege against self-incrimination does not apply to psychological examinations in civil commitment proceedings where the individual's mental condition is at issue and the purpose of the proceeding is treatment rather than punishment. (People v. Superior Court (Williams) (1991) 233 Cal. App.3d 477, 488, 284 Cal.Rptr. 601 [Pen. Code, § 1026.5 proceeding to extend commitment of defendant found not guilty by reason of insanity]; People v. Beard (1985) 173 Cal.App.3d 1113, 1118-1119, 219 Cal. Rptr. 225 [same]; People v. Henderson, supra, 117 Cal.App.3d at pp. 746-747, 172 Cal.Rptr. 858 [MDSO extension proceeding]; *125 People v. Poggi (1980) 107 Cal. App.3d 581, 586, 165 Cal.Rptr. 758 [same]; see also Cramer v. Tyars (1979) 23 Cal.3d 131, 138-139, 151 Cal.Rptr. 653, 588 P.2d 793 [Fifth Amendment testimonial privilege did not prevent mentally retarded person from being called to testify as witness in commitment proceeding under former § 6500].) The rationale of these cases applies equally to a psychological evaluation under the SVP Act. Appellant's statements were admissible even though they were not preceded by a Miranda advisement regarding the right to consult with counsel.

II.
Dr. Gabrielle Paladino treated appellant at ASH after he was transferred there pending his SVP trial. Over defense objection, she testified about their therapy sessions, described her diagnosis that appellant suffered from paraphilia and antisocial personality disorder, and opined that he was more likely than not to reoffend if released. We reject appellant's argument that the patient-psychotherapist privilege rendered this evidence inadmissible.
Evidence Code section 1012 provides that confidential communications between a patient and his psychotherapist are privileged against disclosure in court. Evidence Code section 1024 establishes an exception to this privilege when "the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."
In an analogous context, courts have held that Evidence Code section 1024 permitted treating psychotherapists to testify against prisoners in extension proceedings under the former MDSO program. (People v. Henderson, supra, 117 Cal.App.3d at p. 748, 172 Cal.Rptr. 858; People v. Lakey (1980) 102 Cal.App.3d 962, 976-977, 162 Cal.Rptr. 653.) "`[T]he public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others. The protective privilege ends where the public peril begins.' " (People v. Lakey, supra, 102 Cal. App.3d at p. 977, 162 Cal.Rptr. 653, quoting Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425, 442, 131 Cal.Rptr. 14, 551 P.2d 334.)
The SVP Act, like the MDSO program before it, is designed to identify and civilly commit dangerous sexual predators for the purpose of protecting the public. (Hubbart v. Superior Court, supra, 19 Cal.4th at pp. 1143-1144, 81 Cal.Rptr.2d 492, 969 P.2d 584.) When a treating psychologist believes a prisoner meets the SVP criteria, Evidence Code section 1024 permits the disclosure of otherwise confidential communications to prevent the danger posed by the prisoner's release.
We reject appellant's argument that People v. Wharton (1991) 53 Cal.3d 522, 280 Cal.Rptr. 631, 809 P.2d 290 requires a contrary result. There the defendant had sought counseling from two therapists before he committed the killing which led to the charges against him. Both therapists had warned the victim of a potential risk to her safety based on appellant's statements during the sessions, consistent with Tarasoff v. Regents of University of California, supra, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334. The court concluded that the counselors could testify about the Tarasoff warnings and the statements by the defendant which had triggered the warnings, but cautioned that not all of the defendant's communications during the counseling sessions were automatically admissible. (People v. Wharton, supra, 53 Cal.3d at p. 554, 280 Cal.Rptr. 631, 809 P.2d 290.)
In Wharton, the Tarasoff warnings and the statements leading to the warnings were the only communications which fell within Evidence Code section 1024. Wharton did not hold, as appellant suggests, *126 that a Tarasoff warning is required to invoke the statutory exception under Evidence Code section 1024. (People v. Wharton, supra, 53 Cal.3d at pp. 554-563, 280 Cal.Rptr. 631, 809 P.2d 290.) Unlike the criminal trial in Wharton, the very purpose of an SVP proceeding is to determine whether the prisoner presents a danger to the public. Information gleaned during therapy which has some bearing on this issue is admissible under Evidence Code section 1024 as "necessary to prevent the threatened danger." Dr. Paladino's testimony was properly admitted at trial.

III.
Appellant contends he did not have two qualifying offenses as required by the SVP Act because his 1980 rape conviction was based on a plea of nolo contendere rather than guilty. At the time he entered that plea, Penal Code section 1016, subdivision 3 provided, "The legal effect of [a nolo contendere] plea shall be the same as that of a plea of guilty, but ... may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." (Stats.1976, ch. 1088, § 1, pp. 4930-4931.) Appellant reasons that an SVP proceeding is a "civil suit" within the meaning of former Penal Code section 1016.
We reject the claim. Penal Code section 1016 was amended in 1982 to provide that the legal effect of a nolo contendere plea in a felony case "shall be the same as that of a plea of guilty for all purposes." (Pen.Code, § 1016, subd. 3.) Pleas of nolo contendere to felony charges are now admissible in subsequent civil actions. (Interinsurance Exchange v. Flores (1996) 45 Cal.App.4th 661, 672, 53 Cal. Rptr.2d 18; see also In re Jessica F. (1991) 229 Cal.App.3d 769, 778, 282 Cal. Rptr. 303 [nolo contendere plea to child abuse supported finding in juvenile dependency proceeding].)
The SVP Act does not distinguish between convictions arising from pleas of nolo contendere and those following guilty pleas or trials. A "sexually violent predator" is defined as "a person who has been convicted of a sexually violent offense...." (§ 6600, subd. (a), italics added.) A person who enters a plea of nolo contendere stands convicted of his crime, just as though he had pled guilty. (Calvillo-Silva v. Home Grocery (1998) 19 Cal.4th 714, 725, fn. 9, 80 Cal.Rptr.2d 506, 968 P.2d 65.)

[[/]][**]

V.
The court instructed the jury with CALJIC No. 4.19 (6th ed.1997), which defines the elements necessary for an SVP commitment. Appellant argues the instruction was deficient because it did not require the jury to determine, beyond a reasonable doubt, that each of appellant's two prior convictions was a "predatory" offense. We reject this claim because the SVP law does not require such a finding.
Section 6604 requires the trier of fact in an SVP trial to "determine whether, beyond a reasonable doubt, the person is a sexually violent predator." Section 6600, subdivision (a), defines a sexually violent predator as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent behavior." Neither statute requires the trier of fact to determine that the two sexually violent offenses were predatory.
The word "predatory" is defined in section 6600, subdivision (e), to mean an act that is "directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual *127 with whom a relationship has been established or promoted for the primary purpose of victimization." It appears primarily in the statutes governing the pretrial phases of an SVP petition.
Section 6601, subdivision (b), provides that a prisoner who is a potential SVP "shall be screened by the Department of Corrections and the Board of Prison Terms based on whether the person has committed a sexually violent predatory offense and on a review of the person's social, criminal, and institutional history." (Italics added.) The predatory nature of the prior offenses is thus a factor in the prison screening process designed to identify potential SVPs, but this does not make it a necessary element of the SVP adjudication.
The term "predatory" is also used in the code provisions governing the probable cause hearing which must be held after the screening process is complete and an SVP petition has been filed. (See §§ 6601, subds. (d)-(i), 6602.) The focus at that hearing is not upon the predatory nature of the prisoner's prior offenses, but upon whether the prisoner will engage in predatory conduct in the future. Section 6602 provides, "A judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release...." (§ 6602, subd. (a), italics added.) "No person may be placed in a state hospital ... until there has been a determination ... that there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior." (§ 6602.5, subd. (a), italics added.) While the predatory nature of the prisoner's past offenses may be relevant to these inquiries, it is not a prerequisite to a probable cause determination, much less to the jury's determination of SVP status during the trial phase of the proceeding.
Appellant argues that the People were required to prove his past offenses were predatory under section 6600, subdivision (a), which provides, "The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence...." (Italics added.) The quoted language establishes a rule of evidence for SVP trials, but does not change the substantive definition of what constitutes an SVP. The predatory nature of a prior offense is a factor relevant to predicting future danger. Section 6600, subdivision (a), facilitates proof of this relevant fact by allowing documentary evidence in lieu of the victim's testimony. Had the Legislature wished instead to alter the definition of an SVP, it would have done so explicitly.
We also observe that forcible spousal rape under Penal Code section 262, subdivision (a)(1), is a qualifying SVP offense. (§ 6600, subd. (b).) Few if any such convictions will involve a predatory relationship with the victim as defined by section 6600, subdivision (e). This further suggests the Legislature did not intend the predatory nature of a qualifying offense to be an element of an SVP adjudication.
There is no inherent contradiction between the SVP Act's requirement that prison officials consider the predatory nature of a prior offense during the screening process, and the omission of that element from the SVP determination itself. The predatory nature of the prior offenses allows the prison to identify persons most likely to fall within the SVP criteria; once that identification has been accomplished, the issue of future danger becomes the focus of the proceeding. This aspect of the SVP Act is neither ambiguous nor anomalous, and we decline to add to the language of the statute. (See People v. Loeun (1997) 17 Cal.4th 1, 9, 69 Cal. Rptr.2d 776, 947 P.2d 1313; contrast People *128 v. Buena Vista Mines, Inc. (1996) 48 Cal.App.4th 1030, 1034, 56 Cal.Rptr.2d 21.)

[[/]][***]

VII.
CALJIC No. 4.19 defines "sexually violent predator" as "a person [with] a diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he ... will engage in sexually violent criminal behavior." It also stated that the People had the burden of proving beyond a reasonable doubt that appellant was such a person, as required by section 6604.
During deliberations, the jury sent a note to the court asking, "What standard do we apply to the `likely that he will engage in sexually violent criminal behavior?'" The court responded in writing, "Every element must be proved beyond a reasonable doubt [:] that he has a mental disorder that makes it more likely than not that he will commit a sexually violent offense or [ ] will engage in sexually violent behavior." Appellant argues this answer diluted the reasonable doubt standard and allowed the jury to find he was an SVP based on a preponderance of the evidence. We disagree.
Both CALJIC No. 4.19 and the court's answer to the jury's question stated that the elements of an SVP adjudication must be proved beyond a reasonable doubt. One of those elements is that the prisoner "is likely to engage in sexually violent behavior." (See Hubbart v. Superior Court, supra, 19 Cal.4th at pp. 1147, 1162, 81 Cal.Rptr.2d 492, 969 P.2d 584.) The SVP Act does not require a finding that the prisoner will, beyond a reasonable doubt, commit a sexually violent crime, but rather, that beyond a reasonable doubt he is likely to do so. (People v. Buffington (1999) 74 Cal.App.4th 1149, 1153-1155, 88 Cal.Rptr.2d 696.) The jury was properly instructed on the burden of proof.

[[/]][***]
The judgment is affirmed.
YEGAN, Acting P.J., and MATZ, J.[], concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].
[1] Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] The uncharged acts included an alleged rape of a coworker in 1979 and a 1987 attempted residential burglary of a house occupied by a woman whom appellant knew. Charges arising from the alleged rape were dismissed as part of the plea agreement in the case leading to appellant's 1980 conviction for forcible rape. The attempted burglary resulted in a violation of appellant's parole. There is no suggestion that criminal charges for these acts are being contemplated at this late date.
[**] See footnote *, ante.
[***] See footnote *, ante.
[] Assigned by the Chairperson of the Judicial Council.