[Crim. No. 21776. First Dist., Div. Two. Dec. 18, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES RAYMOND GOFF, Defendant and Appellant.

COUNSEL

Malcolm T. Manwell, under appointment by the Court of Appeal, and Maxwell, Allen & Cooper for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, W. Eric Collins and Nathan D. Mihara, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**DOLGIN, J.***—Appellant appeals from an order, on a jury verdict, extending his commitment to a state hospital under Penal Code section 1026.5. He had been previously adjudged not guilty by reason of insanity of the crime of assault with intent to commit murder (repealed Pen. Code, § 217),[1] and committed to Atascadero State Hospital in 1973. His maximum commitment date was fixed by the Community Release Board. As he was about to approach this date the District Attorney of Napa County, on the recommendation of the medical director of Atascadero State Hospital, filed a petition for extension of the commitment for two more years, pursuant to Penal Code section 1026.5. The matter was set for jury trial and contemporaneously with the start of the trial appellant filed a petition for a writ of habeas corpus in the trial court contending Atascadero was holding him illegally.

Following a jury verdict finding appellant, in the language of section 1026.5, to be suffering "from a mental disease, defect or disorder and as a result thereof he represents a substantial danger of physical harm to others," the trial court ordered appellant's commitment extended for two years, and denied his petition for a writ of habeas corpus. Appellant also appealed in two separate notices of appeal in this proceeding from the order denying his petition for habeas corpus. Such orders are not appealable, thus these appeals must be dismissed. (*In re Hochberg* (1970) 2 Cal.3d 870, 876 [87 Cal.Rptr. 681, 471 P.2d 1].)

Appellant purports to appeal from the judgment of August 7, 1980. In fact, that was the date of the jury verdict. The order extending his commitment (there was no judgment, as such) was made August 13, 1980. We shall deem the appeal from the judgment of August 7, 1980, to be an appeal from the order dated August 13, 1980, granting the petition for extended commitment.

At the trial the district attorney called Dr. Edward Bitter, a psychologist employed at Atascadero who had some direct professional contact with appellant for some six or seven years that appellant was in that hospital. In April 1980, a staff meeting occurred for the purpose of extending appellant's commitment. At this meeting the staff, including

---

*Assigned by the Chairperson of the Judicial Council.
[1]Statutes 1980, chapter 300, sections 1, 2, page 628.

Dr. Bitter, reviewed the record and extracted certain material from the various hospital records and apparently from the memories of different members of the staff and a summary was prepared. Dr. Bitter contributed to only a portion of the summary. Other portions were made or contributed to by others. At trial, during his testimony, Dr. Bitter attempted to use the summary to refresh his recollection and further attempted to relate certain specific instances of violence or threats of violence about which he had not been a percipient witness, nor had he prepared that portion of the summary relating to those incidents. He also used the portion of the summary that he prepared to refresh his recollection.

At trial appellant's counsel stated to the court that she had tried to subpoena the Atascadero records after learning that Atascadero had not voluntarily sent them to the district attorney. Apparently, past practice had been that the records would come automatically to the district attorney who would voluntarily allow counsel to inspect. The subpoena was not served in time to give the hospital five days prior to trial to deliver the records, as allowed under Evidence Code section 1560, subdivision (b). The record is blank on this subject other than counsel's statements. There is no return of service or any indication in the record that the subpoena was issued. Appellant, however, does not rely on the subpoena. When it became apparent that Dr. Bitter was using the summary, counsel made a motion to strike under Evidence Code section 771, and also objected to those portions prepared by other persons as hearsay. The motion to strike Dr. Bitter's testimony was denied, no order was made to the district attorney or Atascadero to produce the records, and the hearsay objection was impliedly overruled as Dr. Bitter proceeded to testify and be cross-examined, using the summary as if he had prepared it from the records personally. The trial judge did order Dr. Bitter to stay over one day just in case the records did arrive and be subject to further cross-examination. Since he did not later resume his testimony, apparently the records did not get to the court.

In addition to Dr. Bitter, Dr. Leonti Thompson, a psychiatrist who had examined appellant three times in 1980, testified, as did Ronnie Ridenour, a senior psychiatric technician from Atascadero. No objection was or is raised to this testimony. Without Dr. Bitter's testimony, the testimony of Dr. Thompson and Ridenour was sufficient to support the jury's finding that appellant suffered from a mental disease, defect or disorder, which presented a substantial threat of physical harm to others.

Witnesses, including appellant and a clinical psychologist, testified on his behalf, giving evidence from which the jury could have found that appellant did not present a substantial danger to others.

During the trial a juror, during a recess, approached two of the district attorney's witnesses in the hallway and for two or three minutes talked about taxes, weather and other matters unrelated to the trial. Defense counsel objected, arguing there was some prejudice to her client because one of the witnesses involved was Dr. Bitter, who, in fact, was an advocate for extension. However, counsel made no specific motion to discharge the juror or to request a mistrial. The trial judge, in overruling the objection, stated he wished the conversation had not happened but that he found nothing inappropriate in it.

The other and most important question raised by the appeal is whether, in order to extend a commitment under Penal Code section 1026.5, there must be a factual finding that the person is amenable to treatment. Factually, there was evidence on this issue mainly brought in by appellant through his own witness, Dr. Roger Wiere, a clinical psychologist, that in fact appellant had made progress but that he continued to need treatment and that he was not ready for independent living with outpatient therapy.

On the other hand, Dr. Bitter from Atascadero stated that on balance the condition of appellant was unchanged and he was difficult to treat and unresponsive to treatment.

However, the record of the trial, otherwise, is devoid of any request by counsel to insert this issue by motion to the court, or proposed instructions, or argument to the jury.

At the hearing on the habeas corpus, counsel did argue amenability but, as indicated previously, the habeas corpus issue is not before us. Quite naturally, the trial judge did not instruct the jury on the issue of amenability.

ISSUES

1. Was it error to deny appellant's motion under Evidence Code section 771, and if so, was it sufficiently prejudicial to warrant a reversal?

2. Was it error to overrule appellant's objection to the conversation between the juror and the witnesses?

Did appellant waive error by merely objecting and not moving for a mistrial or to discharge the juror?

3. Is amenability to treatment an issue in cases where extensions of commitments to Atascadero under Penal Code section 1026.5 are requested; if so, must the court inject the issue *sua sponte*?

1. ■ The appellant's motion under Evidence Code section 771 should have been granted and the testimony of Dr. Bitter stricken. Dr. Bitter, to refresh his memory at trial, used a summary compiled from the hospital records by him and other staff members several months prior to trial. It is not sufficient under Evidence Code section 771 to say that as long as counsel could examine the summary at trial the records need not be produced. To the extent Dr. Bitter's personal recollection was refreshed by the summary, it was really what he recalled from his April 1980 examination of the records. This, therefore, was a use of a writing *prior to trial* by the witness and the plain import of Evidence Code section 771 is that under such circumstances it is mandatory to produce the writing or strike the testimony. It was the obligation of the trial judge to order the records produced whether or not counsel requested a continuance. A motion for production of such documents may be made at trial and the failure to follow the subpoena procedure is not relevant. (*People* v. *Estrada* (1960) 54 Cal.2d 713, 715-716 [7 Cal. Rptr. 897, 355 P.2d 641].)

However, the district attorney clearly established his case independent of Dr. Bitter's testimony. In light of the entire record we conclude that it is not reasonably probable that a result more favorable to the appellant would have been reached had Dr. Bitter's testimony been stricken. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

2. No prejudicial error was committed by the juror's conversations with the witnesses.

■ The conversations were brief and entirely unrelated to the trial. The witnesses testified, out of the presence of the jury, as to the complete extent of the conversations. The trial judge made a specific find-

ing that the conversations were not inappropriate, that is, in any way trial related or that they were harmful to appellant. The conversations, as the trial judge stated, in ruling on appellant's objection, should not have occurred, but they being unrelated to the trial, no harm occurred.

In reviewing the record, it appears the conversations were so brief, so innocuous and so unrelated as not to constitute misconduct. The essence of juror misconduct, as defined in Penal Code section 96, involves communications relating to the trial. The United States Supreme Court in *Remmer* v. *United States* (1954) 347 U.S. 227 [98 L.Ed. 654, 74 S.Ct. 450], ruled that "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . ." (*Id.* at p. 229 [98 L.Ed. p. 656].) The trial judge properly inquired into the conversations and made a finding that they in no way related to the trial. His finding was entirely supported by the evidence.

For a second reason, the judgment on this issue was proper. Trial counsel merely objected and made no motion to excuse the juror for cause and substitute an alternate juror, if there was any, or to move for a mistrial. Any such error was waived thereby. (*Dimmick* v. *Alvarez* (1961) 196 Cal.App.2d 211 [16 Cal.Rptr. 308].)

3. ██ A thorough review of the record demonstrates that the issue of amenability to treatment of appellant was not in any way raised at trial by appellant's counsel in argument or in requests for jury instructions, or at all. Therefore, the question is, should the trial judge have instructed the jury *sua sponte* that in addition to the finding of "dangerousness," they must additionally find appellant was amenable to treatment?

Although the issue of amenability is much discussed in several cases involving the extension commitments of mentally disordered sex offenders (MDSOs) under Welfare and Institutions Code section 6316.2, our research discloses no case involving the extension of the commitment under Penal Code section 1026.5, subdivision (b), of a person previously found not guilty by reason of insanity.

There are, in fact, two lines of authority in the Courts of Appeal as to whether amenability to treatment is an issue in extending commit-

ments in MDSO cases. The authority that amenability is an issue and that this issue is of constitutional dimensions is found in *People* v. *Lakey* (1980) 102 Cal.App.3d 962 [162 Cal.Rptr. 653], and *People* v. *Compelleebee* (1979) 99 Cal.App.3d 296 [160 Cal.Rptr. 233]. On the other hand, in *People* v. *Poggi* (1980) 107 Cal.App.3d 581, 588-589 [165 Cal.Rptr. 758], the court expressly ruled that it would not follow *Compelleebee* and *Lakey*. Those two cases discussed the 1979 amendment to Welfare and Institutions Code section 6316.2, subdivision (j). This statute now reads: "Amenability to treatment is not required for a finding that any person is a person as described in subdivision (a), nor is it required for treatment of such person. Treatment programs need only be made available to such person. Treatment does not mean that the treatment be successful or potentially successful, nor does it mean that the person must recognize his or her problem and willingly participate in the treatment program."

The reason that the MDSO cases are so important is that the California Supreme Court, in the important case of *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097], expressly approved of the extension procedure of Welfare and Institutions Code section 6316.2 for persons having been found not guilty by reason of insanity. Thereafter, the Legislature enacted Penal Code section 1026.5 which "virtually incorporates for insane persons the procedures of Welfare and Institutions Code section 6316.2 for mentally disordered sex offenders." (*People* v. *Poggi, supra*, 107 Cal.App.3d 581, 591, fn. 9.) *Moye*'s principal holding is that insane persons may not be kept in a state hospital for longer than the maximum term for the underlying offense subject, however, to extension recommitments for persons still dangerous to others because of mental disease or defect. In so deciding, there was "no requirement stated in *Moye* that the insane person be amenable to treatment in order to be subject to extension of his commitment . . . ." (*People* v. *Poggi, supra*, at p. 591.)

The Legislature did provide, in the amended statute, for treatment to the person extended in Penal Code section 1026.5, subdivision (b)(9), as follows: "Any commitment under this subdivision places an affirmative obligation on the treatment facility to provide treatment for the underlying causes of the person's mental disorder."

It seems to us that this affirmative obligation satisfies all constitutional requirements.

There being no requirement of amenability to treatment, the trial judge obviously had no obligation, *sua sponte*, or on request, to instruct the jury on that issue.

The purported appeals from the petition for writ of habeas corpus are dismissed. The order extending the commitment is affirmed.

Rouse, Acting P. J., and Smith, J., concurred.

A petition for a rehearing was denied January 15, 1982, and appellant's petition for a hearing by the Supreme Court was denied March 17, 1982. Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.