[Crim. No. 39139. Second Dist., Div. One. May 6, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ALAN BENNETT, Defendant and Appellant.

COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Jill Lansing and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DALSIMER, J.**—The primary issue here presented is whether a person committed to a mental institution after being found not guilty of a felony by reason of insanity may be recommitted without a finding of amenability to treatment.

### PROCEDURAL HISTORY

On March 5, 1975, appellant, James Alan Bennett, after a court trial, was found to have committed an assault with a deadly weapon and to be not guilty thereof by reason of insanity. The court committed appellant to Atascadero State Hospital, where he remained until 1978, when he was transferred to Patton State Hospital.

On July 14, 1980, the People filed a petition for extended commitment pursuant to Penal Code section 1026.5, subdivision (b). Prior to trial, the court ruled that Penal Code section 1026.5., subdivision (b), does not require amenability to treatment. The jury found the allega-

tion in the petition that by reason of mental disease, defect, or disorder, appellant represents a substantial danger of physical harm to others to be true. Based on that finding, the trial court ordered appellant recommitted for a period of two years. Appellant appeals from the judgment of recommitment.

## FACTS

In October 1974, appellant shot his friend, Steven Campbell, while under the delusion that Campbell was stealing his mind and body and causing him to have pains in his heart. In a letter to his father from Patton State Hospital postmarked May 21, 1980, appellant wrote that Steve Campbell tries to stop everything appellant does by living inside him and that appellant constantly hears Campbell's voice speaking nonsense and damaging appellant's thought processes. In the letter, appellant wrote that Campbell wants appellant to kill him, but appellant is unable to do it himself and is also unable to live under Campbell any longer. The letter stated that appellant's friends are "la mafia," and requested that appellant's father transfer appellant's full savings account to his checking account and "let [appellant] take it from there."

At the trial on the petition for recommitment, appellant testified that he continues to have feelings that Campbell is interfering with him in the same way as he did before. He stated that he wrote the letter because he wanted someone to realize the problems he was having, that "[i]t didn't have to occur," and that he thought if he could have some help, he might kill Steve Campbell.

That appellant continues to suffer delusions, has a serious mental illness, and constitutes a substantial danger of physical harm to others was testified to by qualified psychiatrists, psychologists, psychiatric technicians, nurses, and a licensed clinical social worker. There was also testimony that appellant's mental illness manifested itself in physical attacks on others, as well as threats thereof. One of the witnesses was appellant's long-term counselor. Although there was minimal evidence concerning appellant's amenability to treatment for his mental illness, there was evidence that he is being so treated.

## CONTENTIONS

Appellant contends that the trial court erred in ruling that a finding of amenability to treatment is not required for an extension of a com-

mitment for insanity under Penal Code section 1026.5, subdivision (b). Appellant argues that extension of such commitment without a finding of amenability to treatment violates both the California Constitution and the United States Constitution because it denies equal protection (U.S. Const., Amend. XIV; Cal. Const., art. I, § 7) and results in cruel and unusual punishment (U.S. Const., Amends. VIII, XIV; Cal. Const., art. I, § 17). Appellant also alleges that the trial court committed prejudicial error by overruling appellant's objection to admission of the opinions of psychiatrists and other mental health professionals as to appellant's dangerousness.

## DISCUSSION

## I

■ Appellant's contention of violation of equal protection is based on the assumption that persons committed to state hospitals pursuant to Penal Code section 1026 after a finding of not guilty by reason of insanity are similarly situated to convicted felons who are sentenced to prison. Appellant's contention is untenable. Penal Code section 1026.5 reflects a determination by the Legislature to protect the public from persons who have been found to have committed crimes involving violence or the threat thereof and who by reason of mental illness remain dangerous. To effectuate this policy and to protect the ill person as well, section 1026.5 provides that such persons may be recommitted under specified conditions. Such persons are not similarly situated to dangerous prison inmates whose terms are completed, but who are not prevented by mental disease from conforming their conduct to the requirements of the law. (See *People* v. *Poggi* (1980) 107 Cal.App.3d 581, 592 [165 Cal.Rptr. 758].)

Penal Code section 1026 provides that if a defendant has been found insane at the time the offense was committed, "the court, unless it shall appear to the court that the sanity of the defendant has been recovered fully, shall direct that the defendant be confined in a state hospital for the care and treatment of the mentally disordered or any other appropriate public or private treatment facility approved by the county mental health director, or the court may order the defendant placed on outpatient status pursuant to Title 15 (commencing with Section 1600) of Part 2." (All statutory references hereinafter are to the Penal Code unless otherwise specified.)

In *In re Moye* (1978) 22 Cal.3d 457, 467 [149 Cal.Rptr. 491, 584 P.2d 1097], the court held that, subject to the availability of limited extended commitment or a civil commitment, "persons committed to a state institution following acquittal of a criminal offense on the ground of their insanity cannot be retained in the institutional confinement beyond the maximum term of punishment for the underlying offense of which, but for their insanity, they would have been convicted." (*Ibid.*) In an apparent response to the decision in *Moye*, the Legislature enacted section 1026.5.

Section 1026.5, subdivision (a), specifies the maximum term of commitment pursuant to section 1026. Section 1026.5, subdivision (b), provides in pertinent part as follows: "(1) A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if such person has been committed under Section 1026 for a felony of murder, mayhem, . . . *or if the defendant has been found guilty of a felony involving death, great bodily injury, or an act which poses a serious threat of bodily harm to another person, and who by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others.* [¶] (2) If during a commitment, the medical director of a state hospital or other treatment facility has good cause to believe that a patient is a person described in paragraph (1), the director may submit such supporting evaluations and case file to the prosecuting attorney who may file a petition for extended commitment in the superior court which issued the original commitment. . . . [¶] (4) The court shall conduct a hearing on the petition for extended commitment. The trial shall be by jury unless waived by both the person and the prosecuting attorney. . . . [¶] (6) If the court or jury finds that the patient is a person described in paragraph (1), the court may order the patient recommitted to the facility in which the patient was confined at the time the petition was filed for an additional period of two years from the date of termination of the previous commitment. . . . [¶] (9) Any commitment under this subdivision places an affirmative obligation on the treatment facility to provide treatment for the underlying causes of the person's mental disorder." (Italics added.)

Appellant's contention that extension of his commitment violates the proscriptions against cruel and unusual punishment contained in the United States Constitution (U.S. Const., Amends. VIII, XIV) and the California Constitution (Cal. Const., art. I, § 17) is based on *People* v. *Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373]. In

*Feagley*, the court held that an indefinite commitment of a mentally disordered sex offender to an institutional unit on prison grounds is unconstitutional "both because of its undeniable prison setting and because of the admitted lack of treatment provided to those so detained." (*Id.*, at p. 342.) Although the *Feagley* court carefully limited its holding to mentally disordered sex offenders confined in prison (*id.*, at pp. 375-376), the court stated, "[I]nvoluntary confinement for the 'status' of having a mental or physical illness or disorder constitutes a violation of the cruel and unusual punishment clauses of both the state and federal Constitutions (Cal. Const., art. I, § 17; U.S. Const., 8th & 14th Amends.) unless it is accompanied by adequate treatment. [Citations.] 'When patients are so committed for treatment purposes they unquestionably have a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition. [Citations.] Adequate and effective treatment is constitutionally required because, absent treatment, the hospital is transformed "into a penitentiary where one could be held indefinitely for no convicted offense." [Citation.] The purpose of involuntary hospitalization for treatment purposes is *treatment* and not mere custodial care or punishment. This is the only justification, from a constitutional standpoint, that allows civil commitments to mental institutions ....' [Citation.]" (*Id.*, at p. 359, fn. omitted, original italics.)

In *People* v. *Lakey* (1980) 102 Cal.App.3d 962 [162 Cal.Rptr. 653], we relied on this language in *Feagley* in holding that a mentally disordered sex offender's commitment to a mental health facility could not be extended pursuant to former Welfare and Institutions Code section 6316.2 without a finding that the mentally disordered sex offender is amenable to treatment. (*People* v. *Lakey, supra*, 102 Cal.App.3d at pp. 970-972.) We held that since there was ample evidence to support the trial court's conclusion that, if the defendant cooperated in treatment, the condition of his mental disorder would improve, the defendant was amenable to treatment. (*Id.*, at pp. 972-974.)

Our decision in *Lakey* does not compel a requirement of a finding of amenability to treatment before a commitment to a state hospital may be extended under section 1026.5. In thus concluding, we note that the Legislature, in 1981, repealed Welfare and Institutions Code section 6316.2. (Stats. 1981, ch. 928, § 2.) The Legislature stated, "In repealing the mentally disordered sex offender commitment, the Legislature

recognizes and declares that the commission of sex offenses is not in itself the product of mental diseases." (Stats. 1981, ch. 928, § 4.)

While a defendant committed to a state hospital or other treatment facility pursuant to section 1026 or 1026.5 has a constitutional as well as a statutory right to such treatment as will give him a realistic opportunity to be cured of his mental illness or to improve his mental condition and may petition for a writ to compel the facility to provide such treatment (*In re Ingram* (1978) 76 Cal.App.3d 495, 501-502 [142 Cal.Rptr. 825]), recognition of this fact does not require a finding of amenability to treatment.

In *People* v. *Goff* (1981) 127 Cal.App.3d 1039 [179 Cal.Rptr. 190], it was held that the trial court has no duty in an extension of commitment proceeding under section 1026.5 to instruct *sua sponte* that the jury must find that the defendant is amenable to treatment because amenability to treatment is not required. The holding of the court in *Goff* is supported by *Conservatorship of Hofferber* (1980) 28 Cal.3d 161 [167 Cal.Rptr. 854, 616 P.2d 836]. In that case a defendant charged after a preliminary hearing with murder was found mentally incompetent to stand trial, and was committed to a state hospital. After expiration of a second term of commitment to the state hospital the trial court, noting that the defendant had stated he intended to drive a stake through a relative's heart, directed the public guardian to initiate civil conservatorship proceedings. In the conservatorship proceedings, the court found the defendant to be "gravely disabled" and appointed a conservator who was authorized to place him in a state hospital, but made no finding of dangerousness. The Supreme Court held, "[T]he state may confine incompetent criminal defendants, *on grounds that they remain violently dangerous*, when a magistrate or grand jury has found probable cause to believe that they have committed violent felonies." (*Id.*, at p. 174, original italics.) The court stated that the criminal insanity provisions of the Penal Code were "most closely analogous" (*id.*, at p. 176) to the statutory framework for commitment of the permanently incompetent criminal defendant and held that a conservatorship for an incompetent criminal defendant requires written findings that "by reason of a mental disease, defect, or disorder, the person represents a substantial danger of physical harm to others. (See Pen. Code, § 1026.5, subd. (b)(1).)" (*Id.*, at pp. 176-177, fn. omitted.) The court imposed no requirement of a finding of amenability to treatment, and implicit in its reasoning is the conclusion that no such requirement is necessary.

The reasoning of the *Hofferber* court that the state has compelling interests both in public safety and in humane treatment of the mentally disturbed and that variation of the conditions and duration of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of state power applies with equal vigor to the issue here considered.

We hold that the Legislature in not requiring a finding of amenability to treatment under the provisions of Penal Code section 1026.5, subdivision (b), was validly exercising its police power and the section does not impinge upon appellant's constitutional rights.

As there was a clear finding of appellant's continuing dangerousness as a result of mental disease or defect, the extension of appellant's commitment was warranted.

## II

■ Appellant predicates his contention that opinions of psychiatrists and other mental health professionals on appellant's dangerousness should not have been admitted on *People* v. *Murtishaw* (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446]. In *Murtishaw*, the Supreme Court held that, because of the unreliability of expert forecasts of future violence, it was prejudicial error to admit such an opinion at the penalty phase of a capital case. (*Id.*, at pp. 767-775.)[1] The court, however, carefully limited its holding, stating, "[I]n *Tarasoff* [v. *Regents of University of California* (1976) 17 Cal.3d 425 (131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166)] we balanced the 'uncertain and conjectural' harm to the patient against the mortal risk to the potential victim, and concluded that the therapist should act on the basis of his prediction, unreliable though it may be. That same balancing process in the present context yields a far different result. There is nothing speculative about the harm to defendant, who faces not merely a risk of short-term incarceration but of execution. What is uncertain and conjectural is whether defendant, if imprisoned for life, will at some uncertain future date assault some yet unidentified victim. The calculus of risk which called for acting despite uncertainty in the *Tarasoff* setting does not justify executing a defendant to avoid improbable and speculative danger." (*Id.*, at p. 770.)

---

[1] The court stated that "A more reliable forecast ... might be possible if the psychiatrist had established a close, long-term relationship with defendant ...." (*Id.*, at p. 774.)

In the context of a petition for an extension of commitment under section 1026.5, subdivision (b), a finding on whether the individual is dangerous to others because of mental illness is essential. Testimony by mental health experts in this context will often be the only way to establish whether such dangerousness exists.

A mental health professional's opinion on an individual's dangerousness "includes a significant contemporary component. It speaks . . . to the *present* proclivities of the individual; it says that he is at this moment fully *capable* of conduct dangerous to the health and safety of others . . . ." (*People* v. *Henderson* (1980) 107 Cal.App.3d 475, 484 [166 Cal.Rptr. 20], original italics.) In the present case, each of the persons who gave an opinion on appellant's dangerousness qualified as an expert under Evidence Code section 720. Dr. Skrdla had specialized in psychiatry since approximately 1948. Dr. Markman had been practicing psychiatry since 1966. Dr. Scherer had worked as a clinical psychologist at Patton State Hospital for over eight years. Mr. Rathje was a program assistant at Patton State Hospital and had been licensed to do psychotherapy since 1974. Such mental health professionals are routinely called upon to make assessments of present dangerousness. The trial court properly admitted these mental health professionals' expert opinion testimony.

The judgment is affirmed.

Spencer, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 22, 1982. Newman, J., was of the opinion that the petition should be granted.