[No. B165311. Second Dist., Div. Six. Jan. 20, 2004.]

DAVID LEY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## Counsel

William Hansult for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Andrea Hoch, Chief Assistant Attorney General, James Schiavenza, Assistant Attorney General, Joel A. Davis and Theodore B. Zinger, Deputy Attorneys General, for Defendants and Respondents State of California, Stephen Mayberg and William Summers.

Bauer, Harris, Clinkenbeard & Ramsey, William Clinkenbeard, and Maureen E. Clark for Defendants and Respondents County of Ventura and David Gudeman.

## Opinion

**GILBERT, P. J.**—Penal Code section 1618[1] provides that administrators and treatment staff of the Forensic Conditional Release Program (CONREP) and various state agencies and their employees shall not be civilly liable for criminal acts committed by persons in the program.[2]

Plaintiff David Ley, a patient at CONREP, sustained injuries when another patient assaulted him with a knife. He brought an action for damages against defendants the State of California, Steven Mayberg, Director of the State Department of Mental Health, and William Summers, Director of Patton State Hospital (collectively the state); the County of Ventura, and David Gudeman, Director of the Ventura County Behavioral Health Department (collectively the county). He appeals the trial court's dismissal of all his causes of action after granting the defendants' motions for summary judgment.

We conclude, among other things, that section 1618 gives defendants absolute immunity from liability. Ley also did not produce evidence of a triable issue of fact to oppose summary judgment on his federal civil rights claim for damages. We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Section 1618 provides in its entirety: "The administrators and the supervision and treatment staff of the Forensic Conditional Release Program *shall not be held* criminally or *civilly liable for any criminal acts* committed by the persons on parole or judicial commitment status who receive supervision or treatment. *This waiver of liability shall apply to employees* of the State Department of Mental Health, the Board of Prison Terms, *and the agencies or persons under contract to* those agencies, who provide screening, clinical evaluation, supervision, or treatment *to* mentally ill parolees or persons under judicial commitment or considered for placement under a hold by the Board of Prison Terms." (Italics added.)

## FACTS

Ley is a mentally disordered offender. (§ 2962.) He stabbed a security guard and was convicted of assault with a deadly weapon. After he was committed to a state hospital, the superior court ordered him placed in a CONREP "community outpatient treatment" program in Ventura County. CONREP is designed to rehabilitate mentally disordered offenders (MDO's) by giving them more independence than they would have in a state hospital. Participants are outpatients who receive supervision by mental health experts.

In 1986, Ricardo Acosta stabbed his brother with an ice pick. He was found not guilty by reason of insanity of assault with a deadly weapon. He was committed for treatment at Patton State Hospital (PSH).

On May 13, 1997, PSH staff psychiatrist Stephen Salenger and Dr. James Rosenthal submitted a report to the superior court concluding that Acosta was suitable for CONREP outpatient services and was not dangerous. On November 4, 1997, Ewa Gosek and Mark Germaine, PSH staff psychiatrists, and Dr. Sarla Gnanamuthu submitted a report to the superior court that reached the same conclusion.

Theresa Billeci, Chief of Forensic Services for the California Department of Mental Health, stated in her declaration that Marla Beimforde, CONREP's Ventura County Community Program Director, also determined that Acosta was suitable for outpatient placement. Billeci said that the state mental health officials followed all legal procedures in recommending Acosta for outpatient status.

On December 9, 1997, the superior court conducted a hearing and ordered Acosta placed in the Ventura County CONREP program.

Acosta, Ley and another man lived together for 16 months in a three-bedroom apartment as part of CONREP's "semi-independent living" program. Ley and Acosta "got along well" with each other and "frequently barbecued" steaks together.

Beimforde submitted a declaration stating she supervised Acosta and Ley to assure compliance with CONREP program requirements. She said Acosta attended a daily CONREP treatment program. "[H]e was supervised and monitored for attendance at AA meetings, group and individual counseling sessions, and scheduled appointments with his psychiatrist." She said CONREP staff visited the apartment to make sure Ley and Acosta were taking their medications. They administered random urine tests to detect drug or alcohol usage. Acosta was "compliant with his treatment program" and did not use drugs or alcohol.

In November of 2000 Acosta was hospitalized because he "reported feelings of self harm to his therapist." Beimforde said, "After the hospitalization and a change in his medication, . . . Acosta was found to no longer be a threat to himself, and returned to the semi-independent living apartment."

For three months following that hospitalization, Acosta complied with program requirements, did not use drugs or alcohol and took his medications. He was not violent, made no threats and showed no signs of being dangerous.

On February 7, 2001, without warning, Acosta attacked Ley with a steak knife and stabbed him numerous times. In self-defense, Ley stabbed Acosta and killed him.

## PROCEDURAL FACTS

Ley sued the county and the state for damages and personal injuries he sustained from Acosta's criminal assault. His complaint alleged causes of action for damages for violation of mandatory statutory duties (Civ. Code, §§ 43, 1708, 1600 et seq.), negligence, negligent infliction of emotional distress, violation of California civil rights law (Civ. Code, §§ 52.1, 52.3), the state Constitution (Cal. Const., art. I, §§ 7, 17), and damages under the federal civil rights act (42 U.S.C. § 1983). He alleged that Mayberg and Summers knew Acosta was violent and, with "deliberate indifference" to Ley's safety, placed him in CONREP. Ley alleged Gudeman established a policy of placing dangerous people, such as Acosta, in CONREP and was deliberately indifferent to Ley's safety.

The state and the county moved for summary judgment and submitted a copy of Salenger's and Rosenthal's May 13 reports and Gosek's, Germaine's and Gnanamuthu's November 4 reports. The state and the county claimed that (1) they were not negligent and Acosta's attack was unforeseeable; (2) they properly supervised Acosta and Ley; (3) their decision to keep Acosta as a CONREP outpatient was consistent with the applicable standard of care; and (4) there was no causal link between their actions and the knife attack. In their declarations, Mayberg and Summers said that they had no information that "Acosta posed a threat of danger" and the court placed him in CONREP. In his declaration, Gudeman said he was not "involved in the decisions to recommend the placement" of Acosta. He did not know "of any threat of physical harm made by . . . Acosta directed toward . . . Ley."

Ley's evidence in opposition included portions of his own deposition and a police report. Ley testified he lived with Acosta for 16 months without a prior violent incident and "didn't regard [Acosta] as a threat." He said Acosta "never threatened me. He never argued with me." Ley said Acosta was his

"close" friend, was "quiet, upstanding" and "a fine individual." The court granted the motion and ruled that the three state law causes of action were barred by the absolute immunity provision in section 1618. It found there was no evidence to support the federal civil rights cause of action. It concluded the defendants were neither deliberately indifferent nor had they engaged in a policy to deprive Ley of his federally protected rights.

DISCUSSION

I. *Absolute Immunity*

Ley contends that the trial court erred because section 1618 does not provide absolute immunity to the state and the county for his personal injuries caused by Acosta's assault. We disagree.

In determining the legislative intent, we " ' "scrutinize the actual words of the statute, giving them a plain and commonsense meaning . . . ." ' " (*In re Marriage of Corman* (1997) 59 Cal.App.4th 1492, 1498 [69 Cal.Rptr.2d 880].) Where the language is unambiguous, "we are bound by the words of the statute and must conclude the Legislature meant what it said. [Citation.]" (*County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 446 [75 Cal.Rptr.2d 738, 956 P.2d 1191].) A statutory scheme that specifically precludes civil liability for a defendant's particular conduct accords such defendant absolute immunity. (*Krikorian v. Barry* (1987) 196 Cal.App.3d 1211, 1215, 1219 [242 Cal.Rptr. 312].) Where absolute immunity exists, the plaintiff may not sue the immunized defendants by challenging the way they performed the immunized act. (*Storch v. Silverman* (1986) 186 Cal.App.3d 671, 681 [231 Cal.Rptr. 27].)

Section 1618 immunity is neither limited nor qualified. It precludes civil liability against the state and the county for the criminal acts of persons committed or placed at CONREP facilities. Each of Ley's causes of action related to Acosta's criminal act.

Relying on *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334], Ley contends section 1618 does not preclude lawsuits based on the failure of medical professionals to take action to protect third parties from dangerous patients. In *Tarasoff*, a psychotherapist was held liable for his failure to warn the victim about a death threat his patient made against her. The psychotherapist could not shield himself from liability under the immunity provision of Government Code section 820.2. It states in relevant part, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of . . . discretion . . . ." (*Ibid.*)

The psychotherapist's omission did not fall within the discretionary immunity provided by the statute. Keeping the victim in the dark about the grave danger she was in "did not rise to the level of a 'basic policy decision' " which the statute was designed to protect. (*Tarasoff v. Regents of University of California, supra,* 17 Cal.3d at p. 446.) *Tarasoff* noted that "[n]o more specific immunity provision of the Government Code appears to address the issue." (*Id.* at p. 444, fn. 19.) Government Code section 820.2 is a limited immunity provision not applicable here.

But the court reached a different conclusion regarding immunity for police officers who did not confine the patient in *Tarasoff.* It held the officers had absolute immunity based on a provision with language similar to section 1618: "The source of their immunity is section 5154 of the Welfare and Institutions Code, which declares that: '[*the*] *professional person in charge of the facility* providing 72-hour treatment and evaluation, his designee, *and the peace officer responsible for the detainment of the person shall not be held civilly or criminally liable for any action by a person released* at or before the end of 72 hours . . . .' (Italics added.)" (*Tarasoff v. Regents of University of California, supra,* 17 Cal.3d at p. 449.)

Courts in a variety of cases have held that absolute immunity applies where the Legislature has used similar language. (*Gensburg v. Miller* (1994) 31 Cal.App.4th 512, 518 [37 Cal.Rptr.2d 97] [state and county department of social services employees absolutely immune under statute stating a public employee is not liable for injury caused by instituting any judicial or administrative proceeding]; *Krikorian v. Barry, supra,* 196 Cal.App.3d at pp. 1215, 1219 [psychologist had absolute immunity for reporting child abuse under statute which said no medical practitioner " 'shall be civilly or criminally liable . . .' " for making the report]; *Buford v. State* (1980) 104 Cal.App.3d 811, 826–829 [164 Cal.Rptr. 264] [state was absolutely immune from any tort liability under statute which said a public entity is not liable for an injury by a patient of a mental institution].)

██ Ley notes that where the Government Code has immunized the state from liability, it has still authorized litigation against public employees who negligently perform ministerial acts or commit medical malpractice. (See, e.g., *Guess v. State of California* (1979) 96 Cal.App.3d 111, 121 [157 Cal.Rptr. 618].) But section 1618 is more expansive because it shields both agencies and their employees from liability. Its waiver of liability applies to all who provide "screening, clinical evaluation, supervision, or treatment." (*Ibid.*) It does not contain a negligence exception.

Ley contends absolute immunity is contrary to public policy because the defendants placed Acosta in CONREP with him and other MDO's, when they

knew Acosta had a violent history. But the court decided Acosta's placement in CONREP was suitable. (§ 1604; *People v. Sword* (1994) 29 Cal.App.4th 614, 628 [34 Cal.Rptr.2d 810].) Moreover, imposing liability on the defendants, solely because the people they recommend for CONREP had violent pasts, would potentially eliminate this program. Ley and all CONREP participants, by definition, have a past history of violence. (§ 2962 et seq.)

The Legislature established CONREP because of the "need to develop mental health services which are designed to meet the treatment needs of those mentally ill persons *who commit offenses which constitute a threat to public safety . . . .*" (Stats. 1985, ch. 1416, § 1, p. 5003; see Historical and Statutory Notes, West's Ann. Pen. Code (2000 ed.) foll. § 1600.5, p. 63, italics added.) It was aware that MDO's pose "a substantial danger of physical harm to others." (§ 2962, subd. (d)(1).) It knew that it would be difficult for those who administer CONREP to accurately predict how dangerous they were. (*People v. Burnick* (1975) 14 Cal.3d 306, 326 [121 Cal.Rptr. 488, 535 P.2d 352].)

■ The state and the county submitted evidence from the legislative history showing that psychotherapists did not want to participate in these programs without immunity. Their concern about liability stems from the difficulty of predicting the "dangerousness" of MDO's. The immunity provision was therefore essential to the survival of this program.

■ Section 1618 is also consistent with the longstanding policy of immunizing public agencies and employees for decisionmaking about whether and how to confine mentally ill patients. (*Tarasoff v. Regents of University of California, supra,* 17 Cal.3d at p. 447.) The Legislature has determined that there is an overriding "benefit[] to society" by granting such immunity. (*Johnson v. County of Ventura* (1994) 29 Cal.App.4th 1400, 1410 [35 Cal.Rptr.2d 150].) " 'Immunity is extended . . . because reasonable decisions as to how to control particular patients should not be chilled, at the time they are made, by the prospect of liability.' [Citation.]" (*Ibid.*)

## II. *Special Relationship*

Ley contends that even if the defendants have immunity, it does not apply to an injured party who had a "special" relationship with the public entities. (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193].) He argues he had such a relationship because he was a CONREP patient and the state and the county had affirmative statutory duties to protect him which are not subject to section 1618.

### A. Tort Liability for Breach of Mandatory Duties

Ley contends that the state and the county are liable for damages because they had mandatory statutory duties to remove Acosta from CONREP. In support of this claim, he makes a series of arguments.

Civil Code section 1708 provides that "every person is bound to abstain from injuring the person . . . of another," but this states only a general principle of law. (*Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 327–328 [127 Cal.Rptr.2d 482, 58 P.3d 339].) It neither authorizes a cause of action for damages nor establishes specific standards for removal of patients from CONREP. (*Ibid.*)

■ The relevant CONREP statutory provisions give the state and the county discretion to decide how dangerous Acosta was. (§§ 1603, subd. (a)(1), 1608, 1610.) Section 1608 authorizes removal of the patient when the "*treatment supervisor is of the opinion* that the person requires extended inpatient treatment . . .." (Italics added.) Ley therefore did not have a cause of action for damages based on the violation of a mandatory duty, because these decisions involve discretionary medical judgments. (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 [93 Cal.Rptr.2d 327, 993 P.2d 983]; *Hernandez v. State of California* (1970) 11 Cal.App.3d 895, 899 [90 Cal.Rptr. 205].)

### B. State Civil Rights and California Constitution Causes of Action

Ley contends the trial court erred by granting summary judgment on his causes of action for damages under California civil rights law (Civ. Code §§ 52.1, 52.3), California Constitution, article I, section 7, subdivision (a) (due process and equal protection) and article I, section 17 (prohibition against cruel and unusual punishment).

■ Civil Code sections 52.1 and 52.3 prohibit "attempts to interfere" with civil rights or "a pattern or practice of conduct" that deprives people of those rights. The state and the county did not engage in that type of conduct.

In addition, recent cases have held there is no cause of action for damages for violation of article I, section 7, subdivision (a) of the California Constitution. (*Katzberg v. Regents of the University of California, supra,* 29 Cal.4th at p. 307; *Javor v. Taggart* (2002) 98 Cal.App.4th 795, 807 [120 Cal.Rptr.2d 174]; *Bradley v. Medical Board of California* (1997) 56 Cal.App.4th 445, 462–463 [65 Cal.Rptr.2d 483]; see also *DeGrassi v. Cook* (2002) 29 Cal.4th

333, 338, 342 [127 Cal.Rptr.2d 508, 58 P.3d 360].) Moreover, the evidence does not show discrimination or a violation of due process.

■ Nor is Ley entitled to damages for cruel and unusual punishment. He was an outpatient in a rehabilitation program designed for his benefit with extensive supervision and treatment. The defendants Ley sued did not know Acosta was a threat to his safety. Ley's evidence did not show a pattern of indifference or neglect, conditions which "shock the conscience" (*In re Lynch* (1973) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921]), or confinement without adequate medical treatment (*People v. Bennett* (1982) 131 Cal.App.3d 488, 494 [182 Cal.Rptr. 473]).

### III. *The Federal Civil Rights Claim*

Ley contends the court erred by granting summary judgment and dismissing his federal civil rights cause of action. (42 U.S.C. § 1983.) We disagree.

■ For plaintiff to prevail on this claim, the defendants must be deliberately indifferent to Ley's safety or have a custom or policy that violates federally protected rights. (*Robinson v. Prunty* (9th Cir. 2001) 249 F.3d 862, 866; *Monell v. Department of Social Services of City of New York* (1978) 436 U.S. 658, 694 [56 L.Ed.2d 611, 98 S.Ct. 2018].) The facts here do not support this claim and Ley did not produce adequate evidence to show otherwise.

Because defendants are immune from liability, we do not discuss Ley's negligence causes of action.

The judgment is affirmed. Costs to respondents.

Yegan, J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 2004.