Filed 1/14/15  P. v. Moreno CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059742 |
| v. | (Super.Ct.No. FELSS1300774) |
| VICTORIA MORENO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steve Malone, Judge.  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Victoria Moreno appeals from the trial court's finding that she met the criteria of a mentally disordered offender (MDO).  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2009, defendant stabbed a child several times in the chest and then fled the scene. She was convicted of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).)[1] On August 21, 2011, defendant was sentenced to two years in state prison. On February 28, 2012, the Board of Prison Terms (BPT) determined that she met the criteria of having a severe mental disorder (§ 2962) and required her to accept treatment through the State Department of Mental Health as a condition of parole. The BPT reaffirmed the special condition of parole on June 22, 2012. On January 30, 2013, the BPT found that defendant had a severe mental disorder that was not in remission or could not be kept in remission without treatment.

On February 27, 2013, defendant filed a petition with the trial court challenging the BPT's determination that she met the criteria of section 2962 on January 30, 2013. (§ 2966, subd. (b).) Both parties waived a jury trial. Defendant waived her appearance at several hearings. Her counsel appeared and waived time on her trial several times.

A court trial was conducted on September 13, 2013. The prosecution presented Dr. Lauren Stevenson to support its case. The parties stipulated that she was a psychiatrist employed with Patton State Hospital (Patton), and that she qualified as an expert in diagnosing whether individuals meet the criteria of an MDO, pursuant to section 2962. Dr. Stevenson testified that she had been defendant's treating psychiatrist since her arrival at Patton, over one year before the trial. Dr. Stevenson conducted the initial

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

2

evaluation of defendant and diagnosed her with bipolar-type schizoaffective disorder, as well as methamphetamine dependencies and a "ruleout diagnosis of borderline intellectual functioning." Defendant had a long history of involuntary hospitalizations in the community, as well as multiple hospitalizations at Patton. The symptoms from her disorder started in her early 20's. (She was 29 years old at the time of the trial.) She exhibited auditory hallucinations and had been seen responding to internal stimuli. She told staff members she felt distressed about various voices she was hearing. She also had a history of delusional beliefs she thought were true. For example, she felt that she had been pregnant for three years. Defendant had thought disorder symptoms and had difficulty formulating coherent thoughts. She also exhibited symptoms of rapid thoughts, pressured speech, eccentric behaviors, and some grandiosity.

Dr. Stevenson testified that, at the time of the January 30, 2013 hearing, defendant had overt signs and symptoms of her condition, and her condition substantially impaired her judgment. During the period before that hearing, defendant had approximately nine different incidents of either threatening or assaultive behavior that surrounded impulsive decisions to react to something. For example, in 2012, defendant entered a peer's bedroom and started punching her in the head. The next day, defendant became agitated with the staff and approached them with a closed fist, while cursing. On several occasions, she assaulted staff members and had to be placed in a five-point restraint. When asked how these events were related to defendant's condition, Dr. Stevenson said that defendant's auditory hallucinations were distressing for her, and they told her things that led her to become more irritable and to act out against others. Defendant's

3

schizoaffective disorder also made her react impulsively and caused her to be aggressive and unpredictable in her behavior.  Although defendant had been steadily improving over time, Dr. Stevenson said her insight remained poor.

Dr. Stevenson also described defendant's underlying criminal offense, which occurred in 2009.  Defendant went to a house and asked if a certain woman lived there.  The resident said the woman did not live there and asked defendant to leave.  Defendant left the home, but did not leave the premises.  The resident's 11-year-old nephew was playing in the front yard, and defendant stabbed him several times in the chest area, then fled the scene.  Dr. Stevenson said defendant never acknowledged that offense.  When asked if defendant was under the influence of her symptoms when she committed the assault, Dr. Stevenson answered that since she did not evaluate defendant at that time, she did not know "with complete certainty."  However, in her professional opinion, Dr. Stevenson said that she was.  Dr. Stevenson had read the reports on the incident and noted that defendant acted impulsively and irrationally, and that her actions were similar to the way she acted at the hospital.  Dr. Stevenson concluded that defendant represented a substantial danger of physical harm to others due to her schizoaffective disorder.

Defendant presented no evidence.  The People moved to dismiss defendant's petition.  Based on Dr. Stevenson's testimony, the court found beyond a reasonable doubt that at the time of the January 30, 2013 hearing before the BPT, defendant had a severe mental disorder, specifically schizoaffective bipolar type.  The court found that the severe mental disorder was not in remission or could not be kept in remission at the time of the hearing without continued treatment.  The court further found that, because of her mental

4

disorder, defendant represented a substantial danger of physical harm to others. Thus, the court denied defendant's petition and confirmed the extension of her MDO commitment.

ANALYSIS

There Was Substantial Evidence to Support the Trial Court's Finding That Defendant Was an MDO

Defendant contends there was insufficient evidence to support the trial court's findings that she met the MDO criteria on January 30, 2013. She specifically claims there was no evidence that her current mental disorder was a cause or aggravating factor in committing her underlying crime. She also claims that the evidence presented by the prosecution at the trial was stale and did not show that she currently posed a serious threat of physical harm to other people. She further argues there was no substantial evidence that her mental disorder caused a volitional impairment that made it difficult to control her dangerous behavior. Thus, defendant asserts that we must reverse the judgment of the lower court upholding the BPT's finding. We disagree.

A. *Standard of Review*

"A determination that a defendant requires treatment as an MDO rests on six criteria, set out in section 2962: the defendant (1) has a severe mental disorder; (2) used force or violence in committing the underlying offense; (3) had a disorder which caused or was an aggravating factor in committing the offense; (4) the disorder is not in remission or capable of being kept in remission absent treatment; (5) the prisoner was treated for the disorder for at least 90 days in the year before being paroled; and (6) because of the disorder, the prisoner poses a serious threat of physical harm to other

5

people." (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1075-1076 (*Clark*) [Fourth Dist., Div. Two].)

"In considering the sufficiency of the evidence to support MDO findings, an appellate court must determine whether, on the whole record, a rational trier of fact could have found that defendant [was] an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding. [Citation] ""'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the [finding] is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. . . .' [Citation.]"' [Citations.]" (*Clark*, *supra*, 82 Cal.App.4th at pp. 1082-1083.)

B. *There Was Sufficient Evidence That Defendant's Mental Disorder at the Time of the Hearing Was a Cause or Aggravating Factor in Her Underlying Offense*

Defendant first claims there was insufficient evidence establishing that her current mental disorder was the same mental disorder that caused or was an aggravating factor in her committing the underlying offense. We disagree.

"A qualified expert is entitled to render an opinion on the criteria necessary for an MDO commitment, and may base that opinion on information that is itself inadmissible hearsay if the information is reliable and of the type reasonably relied upon by experts on the subject. [Citations.]" (*People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569.) Here,

6

Dr. Stevenson unequivocally testified that defendant had a severe mental disorder. She was an undisputed expert in determining whether or not individuals met the criteria of an MDO, pursuant to section 2962. Dr. Stevenson specifically diagnosed defendant with bipolar-type schizoaffective disorder. She described the nature of schizoaffective disorder as including a combination of psychosis and mania with symptoms, such as rapid thoughts, pressured speech, eccentric behavior, and grandiosity. Defendant also had auditory hallucinations, delusional beliefs, and thought disorder symptoms. When specifically asked if she believed defendant was under the influence of her symptoms when she committed the 2009 assault, Dr. Stevenson replied, "I do." She made clear that her opinion could not be made with "complete certainty," since she had not evaluated defendant at the time of the attack. However, in her professional opinion, Dr. Stevenson believed defendant was acting under the influence of her disorder symptoms. Dr. Stevenson explained that defendant was acting irrationally and impulsively at the time of the 2009 stabbing attack on a child. Dr. Stevenson testified that defendant's behavior was consistent with the behavior she had observed during her treatment of defendant at Patton.

Defendant contends there was no "real evidence that [her current] mental disorder was the same as that present at the time of the 2009 commitment offense." She claims that she had multiple diagnoses and exhibited multiple symptoms over the years. However, the evidence showed that, upon her initial arrival at Patton, defendant was diagnosed with bipolar-type schizoaffective disorder. Throughout her testimony, Dr. Stevenson referred to the condition as defendant's "disorder." She did not indicate that

7

defendant had multiple disorders. Defendant's diagnosis and treatment was consistently for her schizoaffective disorder. Accordingly, Dr. Stevenson testified that, as of January 30, 2013, defendant represented a substantial danger of physical harm to others "due to her [s]chizoaffective disorder." Although there was evidence that defendant exhibited multiple symptoms, they were all related to her schizoaffective disorder. Furthermore, in light of the evidence that defendant's behavior at the time of the 2009 assault was consistent with her behavior at Patton, there was no reason for the trial court to believe that her current mental disorder was not the same disorder that was an aggravating factor in the assault.

C. *The Trial Court Considered the Proper Evidence and Made a Proper Finding*

Defendant contends that, because of the delays agreed to by her counsel, the evidence presented by the People at the September 13, 2013 trial was stale, since it was limited to her condition and behavior in the 12 months preceding the BPT hearing, which occurred on January 30, 2013. She believes the court should have considered evidence regarding her condition and improvement *after* the BPT hearing. Since the court did not do so, defendant argues that it ordered her continued commitment without a finding of her *current* dangerousness. We conclude that the court made a proper finding at the time of the trial.

The BPT determined that defendant met the criteria of section 2962 on January 30, 2013. (§ 2966, subd. (b).) The trial on the petition challenging that finding took place on September 13, 2013. The purpose of the September 13, 2013 hearing was to give defendant an opportunity to challenge the BPT determination that she met the criteria of

8

section 2962 as of the date of the BPT hearing.  (§ 2966, subd. (b).)  Thus, the court could only consider the evidence that was available to the BPT.  Section 2966, subdivision (b), expressly provides that "[e]vidence offered for the purpose of proving the prisoner's behavior or mental status *subsequent* to the Board of Prison Terms hearing shall *not* be considered."  (Italics added.)  Therefore, the trial court was not permitted to consider any evidence regarding defendant's mental condition that existed after the January 30, 2013 BPT hearing.

In support of her claim that the court was required to determine her *current* dangerousness at the September 30, 2013 trial, defendant cites *People v. Bennett* (1982) 131 Cal.App.3d 488 (*Bennett*), *People v. Merfield* (2007) 147 Cal.App.4th 1071 (*Merfield*), and *In re Brian J.* (2007) 150 Cal.App.4th 97 (*Brian J.*).  However, none of those cases stand for the proposition that a trial court must review the BPT's finding that a defendant met the criteria of an MDO based on evidence of the defendant's mental condition at the time of the review hearing.  (*Bennett*, *supra*, 131 Cal.App.3d at p. 497; *Brian J.*, *supra*, 150 Cal.App.4th at pp. 128-129; *Merfield*, *supra*, 147 Cal.App.4th at pp. 1074-1075.)

Defendant also complains that delays in the proceedings were "unwarranted" since her appointed counsel waived time without her personal consent.  However, section 2966, subdivision (b), provides that "[t]he court shall conduct a hearing on the petition within 60 calendar days after the petition is filed, unless either time is waived by the petitioner *or his or her counsel*, or good cause is shown."  (Italics added.)  Thus, no personal waiver was needed to waive time.  Defendant argues that "decisional authority allowing counsel

9

to waive time without the client's agreement runs afoul of due process." She cites this court's decision in *People v. Montoya* (2001) 86 Cal.App.4th 825 [Fourth Dist., Div. Two] (*Montoya*)), and asks us to reconsider the holding in that case. However, *Montoya* concerned the right to waive a jury trial, not the right to waive time. (*Id.* at pp. 828-832.) In any event, the Legislature has made clear that a petitioner's counsel can waive time in an MDO proceeding under section 2966. (§ 2966, subd. (b).)

We conclude that the court considered the proper evidence at the September 30, 2013 review hearing.

D. *There Was Sufficient Evidence That Defendant Represented a Substantial Danger of Physical Harm to Others*

Defendant finally argues there was insufficient evidence that she had a mental disorder that caused a volitional impairment that made it difficult or impossible for her to control her dangerous behavior. Defendant's entire discussion is based on a faulty premise. She relies on *Kansas v. Hendricks* (1997) 521 U.S. 346; *Kansas v. Crane* (2002) 534 U.S. 407, *In re Howard N.* (2005) 35 Cal.4th 117 (*Howard N.*), and *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 (*Hubbart*). However, these cases are inapposite because they involve the civil commitment of defendants under the Kansas Sexually Violent Predators Act and/or the nearly identical California Sexually Violent Predators Act (collectively, the SVPA). (*Hubbart*, *supra*, 19 Cal.4th at p. 1158, fn 24.) The SVPA explicitly requires the finding of a mental abnormality that makes it difficult for the person to control his or her dangerous behavior. (*Hendricks*, *supra*, 521 U.S. at p. 358; *Crane*, *supra*, 534 U.S. at pp. 409-411; *Hubbart*, *supra*, 19 Cal.4th at p. 1158.)

10

Simply stated, the SVPA is a different statutory scheme from the MDO statutes under which defendant's commitment was extended. (*People v. Putnam* (2004) 115 Cal.App.4th 575, 581.) With regard to the element at issue, the MDO law only requires a finding that "the prisoner represents a substantial danger of physical harm to others." (§ 2962, subd. (d)(1); see also *Clark*, *supra*, 82 Cal.App.4th at pp. 1075-1076.) Thus, contrary to defendant's claim, there is no statutory requirement of a finding of difficulty to control dangerous behavior, as in the SVPA.

We further note there was ample evidence from which the court could have concluded that defendant posed a serious threat of physical harm to others. Dr. Stevenson testified as to several specific incidents in 2012 when defendant became physically aggressive with either hospital staff members and/or a fellow patient, as a result of her mental disorder. Dr. Stevenson definitively testified that defendant represented a substantial danger of physical harm to others, due to her schizoaffective disorder.

Ultimately, the evidence supporting defendant's extended MDO commitment consisted of the expert witness, Dr. Stevenson, whom the court found to be credible. We must accord due deference to the court's evaluation of credibility. (*Clark*, *supra*, 82 Cal.App.4th at p. 1083.) Thus, viewing the evidence in the light most favorable to the People, we conclude that there was sufficient evidence to support the extension of defendant's commitment.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

J.

We concur:

RAMIREZ

P. J.

MILLER

J.